No. 82–1390.   ASHLEY ET AL. *v.* CITY OF JACKSON, MISSIS-
SIPPI, ET AL.   C. A. 5th Cir.   Certiorari denied.

JUSTICE REHNQUIST, with whom JUSTICE BRENNAN joins,
dissenting.

This case presents the question whether a victim of alleged dis-
crimination may have his right to sue totally extinguished by a
prior suit to which he was not a party and in which a consent de-
cree was entered before his cause of action even accrued.   Be-
cause I think the Court of Appeals for the Fifth Circuit erred in
holding that a district court cannot entertain a suit challenging
practices allegedly mandated or permitted by a prior consent de-
cree, I dissent from the denial of certiorari.

In March 1974, consent decrees were entered in two suits alleg-
ing race discrimination in the city of Jackson's hiring and promot-
ing practices in its Police Department.   *United States* v. *City of
Jackson*, Civil Action No. J–74–66(N) (SD Miss.); *Corley* v. *Jack-
son Police Dept.*, Civil Action No. 73J–4(C) (SD Miss.).   As de-
scribed by the District Court in this case:

"The consent decree entered in *United States of America* v.
*City of Jackson* required, *inter alia*, that the City of Jackson
adopt and seek to achieve a goal for hiring blacks for one-half
of all vacancies in all job classifications, subject to the avail-
ability of qualified applicants, until such time as the propor-
tion of blacks to whites in each such classification equalled the
proportion of blacks to whites in the working age population
of the City of Jackson.   The *Corley* v. *Jackson Police De-
partment* consent decree incorporated by reference the
*United States of America* v. *City of Jackson* decree and fur-
ther provided that the Jackson Police Department establish
separate promotion eligibility lists for white and black em-
ployees and that it make future promotions, subject to the
availability of qualified black candidates, alternately from
each such list in a one-to-one ratio until the proportion of
black persons in supervisory positions and in the ranks above
patrolman substantially equalled the proportion of blacks to
whites in the working age population of the City of Jackson."
App. to Pet. for Cert. 13A.

In 1976 and 1978, petitioners, who are white, filed two suits
against the city of Jackson alleging that the city had discrimi-

nated against them in the Police Department by hiring or promoting less qualified blacks solely on the basis of their race. In substance, the complaints alleged that the "goals" established in the prior consent decrees were being treated as strict quotas by the city, and that blacks were being hired and promoted over whites without regard to relative qualifications. See First Amended and Supplemental Complaint in Civil Action No. J76–70(R) (SD Miss.), pp. 36–38; Complaint in Civil Action No. J78–0218(C) (SD Miss.), pp. 20–22. Petitioners contended that the challenged practices were not required by the consent decrees or, in the alternative, that the consent decrees were themselves illegal. As a third option, assuming respondents' practices under the consent decrees were necessary to remedy the effects of the city's past racial discrimination, petitioners claimed that they themselves were now victims of that prior discrimination and, as such, were entitled to compensation.

Both suits were brought only after timely charges of discrimination had been filed with the Equal Employment Opportunity Commission (EEOC), and statutory notices of the right to sue had been received. Jurisdiction of the District Court was invoked under the Fifth and Fourteenth Amendments to the Constitution, under Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e–5, and under various other provisions of federal law. The court consolidated the two actions.

Petitioners also filed motions for leave to intervene in the consent decree suits in order to challenge those decrees on their face. The United States opposed the motions on the grounds, among others, that they were untimely and asserted interests already adequately represented by the defendant city. The motions to intervene were denied. No appeal was taken.

Following a hearing, the District Court dismissed the consolidated suits for lack of subject-matter jurisdiction. The court determined that "[t]he practices complained of are the result of consent decrees which were entered" in the prior cases, App. to Pet. for Cert. 12a, and, thus, that the suits constitute an impermissible collateral attack on the consent decrees over which a different court has continuing jurisdiction. The dismissal was affirmed on the same grounds by the Fifth Circuit, and this petition followed.

I find myself at a loss to understand the origins of the doctrine of "collateral attack" employed by the lower courts in this case to preclude a suit brought by parties who had no connection with the

prior litigation. Their cause of action did not even accrue until at least a year after the entry of the consent decrees. And their attempt to intervene in those suits, more than three years after entry of the consent decrees, was denied as untimely.

It is a fundamental premise of preclusion law that nonparties to a prior action are not bound by the judgment. *Sea-Land Services, Inc.* v. *Gaudet,* 414 U. S. 573, 593 (1974); *Zenith Radio Corp.* v. *Hazeltine Research, Inc.,* 395 U. S. 100, 110 (1969). This rule can be traced to an opinion of Chief Justice Marshall in *Davis* v. *Wood,* 1 Wheat. 6, 8–9 (1816); it is part of our "deep-rooted historic tradition that everyone should have his own day in court." 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4449, p. 417 (1981). Only a few Terms ago, we had occasion to stress that "[i]t is a violation of due process for a judgment to be binding on a litigant who was not a party nor a privy and therefore has never had an opportunity to be heard." *Parklane Hosiery Co.* v. *Shore,* 439 U. S. 322, 327, n. 7 (1979).

This principle should apply with all the more force to a consent decree, which is little more than a contract between the parties, formalized by the signature of a judge. The central feature of any consent decree is that it is not an adjudication on the merits. The decree may be scrutinized by the judge for fairness prior to his approval, but there is no contest or decision on the merits of the issues underlying the lawsuit. Such a decree binds the signatories, but cannot be used as a shield against all future suits by nonparties seeking to challenge conduct that may or may not be governed by the decree.

Nonparties have an independent right to an adjudication of their claim that a defendant's conduct is unlawful. Suppose, for example, that the Government sues a private corporation for alleged violations of the antitrust laws and then enters into a consent decree. Surely, the existence of that decree does not preclude a future suit by another corporation alleging that the defendant company's conduct, even if authorized by the decree, constitutes an antitrust violation. The nonparty has an independent right to bring his own private antitrust action for treble damages or injunctive relief. See 2 P. Areeda & D. Turner, Antitrust Law ¶ 330, p. 143 (1978). Similarly, if an action alleging unconstitutional prison conditions results in a consent decree, a prisoner subsequently harmed by prison conditions is not precluded from bringing suit on the mere plea that the conditions are in accord-

ance with the consent decree. Such compliance might be relevant to a defense of good-faith immunity, see Pet. for Cert. in *Bennett* v. *Williams*, O. T. 1982, No. 82–1704, but it would not suffice to block the suit altogether.

In litigation under Title VII of the Civil Rights Act of 1964 we have constantly stressed the importance of individual enforcement actions, and have shown great reluctance to find such actions precluded. Thus, in *Alexander* v. *Gardner-Denver Co.*, 415 U. S. 36 (1974), we held that an individual does not forfeit his private cause of action if he first pursues his grievance under the nondiscrimination clause of a collective-bargaining agreement.

> "Title VII . . . specifies with precision the jurisdictional prerequisites that an individual must satisfy before he is entitled to institute a lawsuit. In the present case, these prerequisites were met when petitioner (1) filed timely a charge of employment discrimination with the Commission, and (2) received and acted upon the Commission's statutory notice of the right to sue . . . . There is no suggestion in the statutory scheme that a prior arbitral decision either forecloses an individual's right to sue or divests federal courts of jurisdiction." *Id.*, at 47.

In this case, petitioners have satisfied the same prerequisites, and "[t]here is no suggestion in the statutory scheme that a prior [consent decree to which petitioners were not parties] either forecloses an individual's right to sue or divests federal courts of jurisdiction." *Ibid.*

In *General Telephone Co.* v. *EEOC*, 446 U. S. 318, 332 (1980), we held that the EEOC may seek classwide relief under Title VII without being certified as the class representative under Rule 23 of the Federal Rules of Civil Procedure, even though we recognized that a judgment so obtained would not "be binding upon all individuals with similar grievances in the class or subclasses that might be certified."

> "In light of the 'general intent to accord parallel or overlapping remedies against discrimination,' . . . we are unconvinced that it would be consistent with the remedial purpose of the statutes to bind all 'class' members with discrimination grievances against an employer by the relief obtained under an EEOC judgment or settlement against the employer. This is especially true given the possible differences between the

public and private interests involved." *Id.*, at 333 (citing *Alexander, supra,* at 47).

We did acknowledge in that case that "where the EEOC has prevailed in its action, the court may reasonably require any individual *who claims under its judgment* to relinguish his right to bring a separate private action." 446 U. S., at 333 (emphasis added). But we were unwilling to bind a class member to a prior judgment when that class member decides to forgo the available class relief because he thinks he can obtain better relief in a private action. It certainly seems to follow that we would not preclude someone who was not a party to the prior action from bringing a private enforcement suit.

Finally, just last Term, in *W. R. Grace & Co.* v. *Rubber Workers,* 461 U. S. 757 (1983), we held that a union, which declined to participate in conciliation between the EEOC and a private corporation, could subsequently challenge layoffs made pursuant to the conciliation agreement as in violation of the seniority provisions of its collective-bargaining agreement with the corporation. The unanimous Court was unmoved by the Company's claim that such suits would subject it to conflicting obligations. "The dilemma," we stressed, "was of the Company's own making." *Id.*, at 767. The Company was attempting, by hiding behind the conciliation agreement, "to shift the loss to its male employees, who shared no responsibility for the sex discrimination." *Id.*, at 770.

In sum, I see no justification, either in general principles of preclusion or the particular policies implicated in Title VII suits, for the District Court's refusal to take jurisdiction over this case. Accordingly, I would grant certiorari to review the judgment of the Court of Appeals for the Fifth Circuit.