MACK, Associate Judge:
 

 This is an action by the District of Columbia under the D.C. Consumer Protection Procedures Act (CPPA), D.C.Code, §§ 28-3901 — 28-3908 (1981), to enforce an agreement entered into by the District’s Office of Consumer Protection in settlement of a consumer complaint against appellant Mallory E. Baker. The agreement provided that in settlement of the action, Baker would pay the consumer, Mary P. Buckley, a total of $2000 in four equal installments of $500. When Baker defaulted on the agreement, the District filed a complaint in the Superior Court, requesting the court to order, as a remedy for that default, the rescission of the underlying contract between Baker and Buckley.
 
 [1]
 
 Following the filing of an answer to the complaint, the trial court granted the District’s motion for judgment on the pleadings, finding that the underlying contract was void, and ordering rescission and restitution to Buckley of the full amount paid under the contract, plus interest and costs. We find that given the posture of the case as it was brought by the agency, the trial court had no jurisdiction to adjudicate the merits of the underlying claim, but was limited to enforcement of the settlement agreement between the parties. We therefore reverse and remand for additional proceedings.
 

 The undisputed facts of this case are as follows. On July 20, 1978, Baker entered into a contract with Buckley in which he agreed to enclose and extend a side porch on Buckley’s house for $10,235, estimating that the work would require 75 days to complete. Baker accepted two installments of $3411.67 towards the total price in advance of completion of the work. In May of 1980, Buckley complained to the Office of Consumer Protection, now the Office of Consumer and Regulatory Affairs [hereinafter “the agency”], that the work had not been completed in a satisfactory manner, although the nature of the problem has not been identified and Buckley’s complaint has not been included in the record.
 

 Once a complaint is filed, the agency is directed to “investigate” and to “determine: (1) what trade practice actually occurred, and (2) whether the trade practice which occurred violates any statute, regulation, rule of common law, or other law, of the District of Columbia.” D.C.Code § 28-3905(b). In the course of this investigation, the agency must “consult the respondent [Baker] and such other available sources of information.”
 
 Id.
 
 The legislative history for the CPPA provides that under § 28-3905(b), the merchant must be “given a chance, to explain the occurrence. A thorough investigation must be made .... ” D.C.Council Rep. on Bill 1-253 (Mar. 24, 1976) [hereinafter “Legislative History”], at 19. There is nothing in the record to indicate that the agency investigated the allegations of Buckley’s complaint under this section. There is no evidence that it made an independent investigation of whether Baker had not completed the work described in the parties’ contract or had completed it in an unworkmanlike manner.
 
 *1285
 
 Instead, the agency found reasonable grounds to believe that Baker had not obtained a home improvement contractor’s license, and that without such a license, his receipt of installment payments from Buckley prior to completion of the work violated 5Y DCRR § 2.1 (1970) (now codified at 16 DCMR § 800.1 (1983)). That regulation provides:
 

 No person shall require or accept any payment for a home improvement contract in advance of the full completion of all work required to be performed under the contract, unless that person is licensed as a home improvement contractor. . . .
 
 [2]
 

 Violators of this regulation are subject to prosecution by the Corporation Counsel’s office and may be punished by a fine of up to $300 or a jail term of up to 90 days, or both. D.C.Code § 2-504 (1981) (formerly codified at D.C.Code § 2-2304 (1973)); D.C. Code § 2-505 (1981) (formerly codified at D.C.Code § 2-2305 (1973));
 
 see
 
 16 DCMR § 800.6 (1983) (formerly codified at 5Y DCRR § 4.14 (1970)). Although violations of the home improvement licensing regulations are not listed among those trade practices that are defined as unlawful under the CPPA,
 
 see
 
 D.C.Code § 28-3904, the agency interprets its statutory mandate to encompass “trade practice[s] in violation of
 
 any law
 
 of the District of Columbia,” D.C. Code § 28-3903(a)(13) (emphasis added),
 
 [3]
 
 including the 5Y DCRR § 2.1 requirement that nonlicensed home improvement contractors refrain from accepting any payment until all work contracted for has been completed.
 
 [4]
 

 In lieu of further administrative proceedings on Buckley’s complaint — referral to an administrative law judge for a hearing, D.C.Code § 28-3905(e)(3), (f) & (g) — the agency entered into a settlement agreement with Baker under the authority of D.C.Code §§ 28-3905(e)(l), -3905(h)(1). The parties to the agreement were the agency, Baker and Buckley. In this agreement, Baker made no admission that-he had violated any law or regulation (Agreement § I ¶ 5), but he agreed to pay Buckley $2000 in full settlement of the dispute
 
 (id.
 
 § II ¶ 1). The parties further provided, however, that “[n]o party ... waives any right to enforce its rights either before the Section of Hearings, or before any appropriate Court should the terms of this [agreement] not be carried out.” (Section I 116).
 

 The agency has no independent power to enforce settlement agreements through civil contempt proceedings or the like, and therefore the agreement also provided that the parties “consented] to the jurisdiction of the Superior Court of the District of Columbia in a suit to enforce” the agreement. (Section I II4). The CPPA specifically provides for such enforcement suits in D.C.Code § 28-3905(i)(3)(B). In the event of a breach of the agreement, the District by statute may not only recover the amount agreed to in the settlement agreement, but in addition may request that the court assess a $1000 fine for the violation. D.C.Code § 28-3905(i)(3)(A)(ii). Attorney’s fees may also be recovered. Section 28-3905(i)(3)(B).
 

 Baker breached the settlement agreement. The agency then sued, and argued to the Superior Court that the court had the power, in an enforcement action under § 28-3905(i)(3)(B), to itself determine whether Baker had committed an unfair trade practice, and to order as relief the rescission of the underlying porch extension contract. The agency was thus contending that the court had the authority to adjudicate the merits of a consumer com
 
 *1286
 
 plaint, despite the statutory grant of primary jurisdiction to the agency in these types of cases to make the initial determination following an agency hearing.
 

 It is clear, however, that the Superi- or Court is the forum of first instance under § 28-3905(i)(3)(B) only for enforcement and collection of agency orders: settlement agreements under § 28-3905(h)(l), civil fines under § 28-3905(i)(3)(A), and final orders of the Section of Hearings under § 28-3905(g).
 
 See
 
 Legislative History,
 
 supra
 
 at 23.
 
 [5]
 
 For all other determinations, the agency’s Section of Hearings is the proper initial forum.
 

 The agency points out that language in section 28-3905(i)(3)(B) permits the trial court in certain enforcement actions to order as relief “consumer redress.”
 
 [6]
 
 In an action by a consumer to enforce a settlement agreement, “consumer redress” might include the costs of the enforcement action. The award of rescission of an underlying consumer contract as “consumer redress” may be part of the trial court’s order, however, only in an action to enforce a final order of the Section of Hearings. This is so because an interpretation of the statute that would allow the agency this relief in an action to enforce a consent decree would have the effect of abrogating the terms of that decree. In interpreting this statute we must be mindful of the fact that a consent decree is a valid contract between the parties and “binds its signatories,”
 
 see Ashley v. City of Jackson,
 
 — U.S. -, 104 S.Ct. 255, 257, 78 L.Ed.2d 241 (1983) (Rehnquist & Brennan, JJ., dissenting from the denial of certiorari), and its scope “must be discerned from within its four corners.”
 
 Commodity Futures Trading Commission v. Premex, Inc.,
 
 655 F.2d 779, 782 (7th Cir.1981). Within the “four corners” of the parties’ agreement here is a denial of illegality and a reservation of the right to a hearing before the agency on the underlying claim. There is no provision of the CPPA that allows the agency, when it is the plaintiff in an action to enforce a settlement contract, to ignore the terms of that contract and to bypass its own procedures for claim investigation and adjudication. No provision of the statute permits the agency to argue that in an action nominally captioned as one to “enforce” the settlement agreement the court could impose as a punishment for Baker’s default what is in effect a voiding of that agreement, and then proceed to adjudicate the merits of the underlying contract dispute based on an empty record.
 

 The agency must follow the procedures set forth in the statute notwithstanding its argument that public policy requires the voiding of all contracts by unlicensed home improvement contractors who receive
 
 *1287
 
 advance payments from consumers.
 
 [7]
 
 The agency contends that no agency hearing was necessary because the only relevant facts were admitted by Baker in his answer: that he did not have a license, and that he contracted with Buckley and received advance payments from her. This argument must fail, because, the question of whether the agency is empowered to sue on an underlying consumer contract when a consent decree is violated cannot be decided on an ad hoc, case-by-case basis,
 
 i.e.,
 
 only when summary judgment may be appropriate.
 

 Moreover, there were issues of material fact disputed in this case: Baker asserted that part of the work on Buckley’s home was performed by licensed subcontractors, and that an award of damages against him for work that was carried out by licensed workers is error. Baker was entitled to an evidentiary hearing on this question.
 
 Truitt v. Miller, supra
 
 note 7, 407 A.2d at 1078.
 

 In summary, the agency must decide whether it is willing to settle in this case for enforcement of its consent decree, and perhaps the assessment of a civil fine, attorneys fees, and/or costs, or if it wants to reopen the merits of the underlying dispute. If the latter, then the agency must afford Baker an opportunity for a hearing, pursuant to the consent decree, adhering to the procedures set forth in the statute, D.C.Code § 28-3905. Following the issuance of an agency order setting forth both the facts of the dispute and the nature of the unfair trade practice, and awarding damages or other relief, the trial court will have the power to enforce the order and to fashion any additional remedy that it sees fit within a factual context. We therefore remand to the trial court for further proceedings should the agency choose to enforce the consent decree, or for a remand to the agency should the agency choose to pursue the rescission remedy.
 

 So ordered.
 

 [2]
 

 2. This regulation was issued under D.C.Code §§ 47-2344, -2345 (1973) (now codified at D.C. Code §§ 47-2842, -2844 (1981)).
 

 [3]
 

 . Certain limited exceptions to the agency’s jurisdiction are listed in D.C.Code § 28-3903(c); none are relevant here.
 

 [4]
 

 .We express no opinion as to the merits of the agency’s construction of the statute.
 

 [5]
 

 . Under D.C.Code § 28-3905(k)(l), the consumer may bypass the agency entirely and file an action directly in the Superior Court alleging that he has been the victim of an unfair trade practice, and may recover treble damages and attorney’s fees under that section. No such suit has been brought in this case, however; the agency captioned its suit as one to enforce the settlement agreement, and Buckley is not even a party to this action.
 

 [6]
 

 . That section provides:
 

 The Office, the complainant, or the respondent may sue in the Superior Court of the District of Columbia for a remedy, enforcement, or assessment or collection of a civil penalty, when any violation, or failure to adhere to a provision of a consent decree described in subsection (h), or an order de.scribed in subsections (f), (g) or (j) [these sections describe procedures for adjudication on the merits by the Section of Hearings and its final orders], has occurred. The Office shall sue in that Court for assessment of a civil penalty when an order described in subsection (g) [final orders of the Section of Hearings] has been issued and become final. A failure by the Office or any person to file suit or prosecute under this subparagraph in regard to any provision or violation of a provision of any consent decree or order, shall not constitute a waiver of such provision or any right under such provision. The Court shall levy the appropriate civil penalties, and may order, if supported by evidence, temporary, preliminary or permanent injunctions, damages, treble damages, reasonable attorney's feés, consumer redress, or other remedy.
 

 [7]
 

 .
 
 See Truitt v. Miller,
 
 407 A.2d 1073, 1079 (D.C.1979);
 
 Miller
 
 v.
 
 Peoples Contractors, Ltd.,
 
 257 A.2d 476, 478 (D.C.1969).
 
 Cf. Matthew A. Welch & Sons, Inc. v. Bird,
 
 193 A.2d 736, 738-39 (D.C.1963);
 
 Cook v. James E. Griffith, Inc.,
 
 193 A.2d 427, 428 (D.C.1963);
 
 Murphy v. Mallos,
 
 59 A.2d 514, 516 (D.C.1948);
 
 William J. Davis, Inc. v. Slade,
 
 271 A.2d 412, 415 n. 6 (D.C.1970). Baker has consistently denied that he did not complete the work as promised. Although the case law seems to provide that "public policy" in these types of cases may require the contractor to disgorge any amount received from the consumer — and may therefore permit windfall recoveries to the consumer in some instances — it is unwise to permit the fashioning of such a "public policy" remedy absent any facts in evidence upon which that remedy may be grounded.