For the foregoing reasons, the judgment of the district court is

REVERSED and REMANDED.

Michael A. DUNN, et al., Plaintiffs,

v.

James B. CAREY, Delaware County Sheriff, et al., Defendants.

Nos. 86–2101, 86–2102.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1986.

Decided Dec. 16, 1986.

Lawrence M. Reuben, Atlas, Hyatt & Reuben, P.A., Fergus Kear, Indianapolis, Ind., for plaintiffs.

H. Erskine Cherry, Braddock, Cherry, Godfrey & Clase, Anderson, Ind., for defendants.

Before FLAUM and EASTERBROOK, Circuit Judges, and SWYGERT, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Michael Dunn and two others filed suit in 1978, on behalf of a class of inmates, contending that conditions at the Delaware County Jail violated the constitutional rights of pretrial detainees. The case was settled in 1984 by a consent decree providing for the construction of a new "Public Safety Complex" in Delaware County. The Complex was to include a new city hall for Muncie, Indiana, and new police facilities as well as a new jail. Under the decree the city and county governments would lease the Complex, and the cost of the lease would be directly funded by new taxes.

Richard Amburn and Effie Mae Kingen, who were not parties to the federal litigation, complained to the Indiana State Board

of Tax Commissioners that the adoption of the plans and lease was irregular, because the parties had bypassed procedures required by state law for the approval of public buildings. The Board thought otherwise and approved both the lease and the ensuing tax. Amburn and Kingen then filed suit in the Delaware Superior Court, asking the court to upset the Board's decision.

Contending that the pending state action prevented their borrowing the money to build the Complex, the parties in the federal action asked the district judge to join Amburn and Kingen as parties and to enjoin the conduct of the state case. The judge dismissed the petition to join Amburn and Kingen. 110 F.R.D. 439 (S.D.Ind. 1986). We have jurisdiction of the appeal from this decision because the federal parties wanted an injunction against Amburn and Kingen. The court's refusal to add them as parties was just the procedural device by which it denied the injunction, and under 28 U.S.C. § 1292(a)(1) the disposition is appealable. Procedural devices that effectively deny injunctive relief and cause irreparable harm to the moving party's quest for injunctive relief are treated as orders denying injunctions. *Carson v. American Brands, Inc.*, 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981); *Uehlein v. Jackson National Life Insurance Co.*, 794 F.2d 300 (7th Cir.1986); *Donovan v. Robbins*, 752 F.2d 1170, 1173–74 (7th Cir.1985). The order refusing to add Amburn and Kingen as parties conclusively denies all of the relief that had been requested, and so we have jurisdiction.

The district judge concluded that adding Amburn and Kingen as parties is inappropriate because no relief against them is available. None is available, the judge held, because Amburn and Kingen have invoked in state court remedies against the collection of taxes. The judge read the Tax Injunction Act, 28 U.S.C. § 1341, as prohibiting any federal relief when a litigant in state court is pursuing plain, speedy, and efficient remedies against the assessment or collection of tax-es. The Indiana remedies are plain, speedy, and efficient, the judge concluded, making federal relief unavailable. The parties have debated at length whether Amburn and Kingen's remedies are plain, speedy, and efficient; we conclude, however, that the Tax Injunction Act does not apply to this case.

The several litigants want two sorts of relief. Amburn and Kingen want an injunction against the assessment of taxes, and they have asked a state court for this. The federal parties want an injunction against the conduct of state litigation, and they have asked a federal court for this. The Tax Injunction Act applies only to requests that federal courts interfere with the collection of state taxes; a separate Anti-Injunction Act, 28 U.S.C. § 2283, governs requests that federal courts interfere with the conduct of state litigation.

The Tax Injunction Act provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

The natural reading of this language is that district courts confronted with requests to "enjoin, suspend or restrain" state taxes shall stay their hands unless there are no "plain, speedy and efficient" state remedies. The district judge was not requested in this case to interfere with the collection of a tax; he was asked to interfere with the conduct of litigation. If he had interfered as requested, the result would have been to *allow* the collection of a tax. On the other hand, the request to enjoin state litigation brought into play the Anti-Injunction Act of 1793, 28 U.S.C. § 2283, which says:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

This statute exactly describes what the federal parties want: an "injunction to stay

proceedings in a State court". And the ground on which the parties want it also is listed: "to protect or effectuate" a judgment, here the consent decree.

■ Although the district court concluded that § 1341 applies to any federal litigation touching on the subject of state taxes, neither the language nor the legislative history of the statute supports this interpretation. The text of § 1341 does not suggest that federal courts should tread lightly in issuing orders that might allow local governments to raise additional taxes. The legislative history, exhaustively reviewed in cases such as *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 512–14, 522–23, 101 S.Ct. 1221, 1233–34, 67 L.Ed.2d 464 (1981), shows that § 1341 is designed to ensure that federal courts do not interfere with states' collection of taxes, so long as the taxpayers have an opportunity to present to a court federal defenses to the imposition and collection of the taxes. The legislative history is filled with concern that federal judgments were emptying state coffers and that corporations with access to the diversity jurisdiction could obtain remedies unavailable to resident taxpayers. There was no articulated concern about federal courts' flogging state and local governments to collect additional taxes.

The parties have not identified, and we have not found, any legislative history suggesting that the statute deals with injunctions against litigation, or forbids injunctions that might increase state taxes. If the statute had this effect, then injunctions that compel or lead inevitably to the collection of state taxes, as in *Milliken v. Bradley*, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977), would fall under a cloud. Injunctions that lead to taxes must be scrutinized under the eleventh amendment and related principles of governmental immunities, see *Papasan v. Allain*, — U.S. —, 106 S.Ct. 2932, 2939–43, 92 L.Ed.2d 209 (1986); *Gary A. v. New Trier High School District No. 203*, 796 F.2d 940 (7th Cir. 1986). They do not face an additional hurdle under § 1341. That statute has nothing to do with complaints that federal courts are causing or allowing states to collect *too much* money in taxes. Cf. *Board of Education v. Bosworth*, 713 F.2d 1316 (7th Cir.1983) (§ 1341 does not forestall a federal suit to compel a state to distribute taxes, once collected, in accordance with law).

■ The irrelevance of § 1341 does not imply, however, that the district court should have fetched Amburn and Kingen into the case or granted the injunction the parties request. The Anti-Injunction Act bars the way unless the injunction is necessary to "protect or effectuate" the federal judgment. This language was added to § 2283 in 1948 in order to reverse the result of *Toucey v. New York Life Insurance Co.*, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941), which had held that the losing party in a federal case may obtain from a state court a redetermination of the subject decided by the federal judgment. See Martin H. Redish, *The Anti-Injunction Statute Reconsidered*, 44 U.Chi.L. Rev. 717, 722–26 (1977). See also *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 285–93, 90 S.Ct. 1739, 1742–46, 26 L.Ed.2d 234 (1970). The new language permits the federal court to preempt the state proceeding by declaring the preclusive effect of its own judgment. So if the defendants in this case had taken to the state courts to challenge the consent decree, the district judge could have enjoined the suit and pulled the dispute back into federal court. We may assume that if people acting in concert with the defendants had initiated the state suit, the result could be the same. See *United States v. ASCAP*, 442 F.2d 601 (2d Cir. 1971) (using the relitigation exception to enjoin a state suit filed by members of an organization that was party to a consent decree). But Amburn and Kingen were not parties in the federal case and are not otherwise directly bound by the federal decree. It follows that they may litigate in a forum appropriate to the nature of the claim. See *Bechtel Petroleum, Inc. v. Webster*, 636 F.Supp. 486, 497–503 (N.D. Cal.1984), aff'd and adopted, 796 F.2d 252

(9th Cir.1986). To the extent there is doubt, the federal court should err on the side of non-intervention. *Atlantic Coast,* 398 U.S. at 297, 90 S.Ct. at 1748. See also *California v. Grace Brethren Church,* 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982) (reading § 1341 to prohibit declaratory judgments as well as injunctions); *Fair Assessment in Real Estate Ass'n v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981) (discussing principles of comity in cases that involve state taxation); *Vendo Corp. v. Lectro-Vend Corp.,* 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977); *Alcan Aluminum Ltd. v. Department of Revenue,* 724 F.2d 1294, 1298 (7th Cir.1984); *Schneider Transport, Inc. v. Cattanach,* 657 F.2d 128 (7th Cir.1981), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982). The principles of comity that underlie § 1341 and § 2283 call for allowing a state to decide for itself when and how disputes about the size and distribution of its taxes shall be settled. Indiana has created a forum in which arguments about taxation may be heard. The text of the statutes to one side, it would take compelling circumstances to justify the displacement of this dispute into federal court. Section 1341 required Amburn and Kingen to file their suit in state court. There it should remain.

 Things might be otherwise if the federal case had been adjudicated on the merits rather than ended by a consent decree. The federal plaintiffs' claim arises under the Constitution and 42 U.S.C. § 1983. This potentially activates the "expressly authorized" exception to § 2283, see *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). A court may be able to prevent even strangers from attempting to upset a final judgment that directs the parties to rectify a violation of federally protected rights. See *Thomason v. Cooper,* 254 F.2d 808 (8th Cir.1958). The consent decree, however, is not based on § 1983 and therefore does not "expressly authorize" an injunction against third parties. Consent decrees are contracts. Their force comes from the agreement of the parties, not from the statute on which the complaint was based. *Firefighters Local 93 v. City of Cleveland,* — U.S. —, 106 S.Ct. 3063, 3076, 92 L.Ed.2d 405 (1986) ("it is the agreement of the parties, rather than the force of the law upon which the complaint was originally based, that creates the obligations embodied in a consent decree."); *Evans v. Jeff D.,* — U.S. —, 106 S.Ct. 1531, 1537, 89 L.Ed.2d 847 (1986). Consent decrees are judgments as well as contracts. They conclude litigation and may be enforced by contempt of court. The quality of this contract as judgment would allow the court to invoke the relitigation exception to § 2283 to bar further disputation between the parties to the case.* But decrees as judgments do not have the same effect for purposes of § 2283 on third parties as do fully litigated judgments. Cf. *W.R. Grace & Co. v. Rubber Workers,* 461 U.S. 757, 767 n. 9, 770–72, 103 S.Ct. 2177, 2184 n. 9, 2185–86, 76 L.Ed.2d 298 (1983). The consent of the federal plaintiffs and the federal defendants does not impose obligations on or subtract from the rights of Amburn and Kingen. To the contrary, "parties who choose to resolve litigation through settlement may not dispose of the claims of a third party ... without that party's agreement." *Firefighters,* 106 S.Ct. at 3079. See also *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 695–97 (7th Cir.1986) (en banc).

 Because a consent decree's force comes from agreement rather than positive

---

* See, e.g., *United States v. ASCAP,* 442 F.2d 601, 603 (2d Cir.1971), which holds that a consent decree allows an injunction against litigation by members of an organization that is a party to a consent decree. See also Fed.R.Civ.P. 65(d) (an injunction binds all persons "in active concert" with a party, if they have actual notice). In *United States v. District of Columbia,* 654 F.2d 802, 808–11 (D.C.Cir.), *cert. denied,* 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981), the court used the relitigation exception of § 2283 to support an injunction against an intervenor in the federal litigation. (It is not clear in this case, however, whether the injunction implemented a consent decree that included the intervenor or whether, instead, it implemented a contested judicial decision.)

law, the decree depends on the parties' authority to give assent. *United States v. Beebe*, 180 U.S. 343, 351–55, 21 S.Ct. 371, 374–76, 45 L.Ed. 563 (1901); *Morgan v. South Bend Community School Corp.*, 797 F.2d 471, 477–78 (7th Cir.1986). A party who settles a dispute but lacks such authority may withdraw the assent, we concluded in *Morgan*. Third parties, not even colorably bound by the decree, also should be able to challenge the authority of the person assenting to the decree. See *United States v. Jefferson County*, 720 F.2d 1511, 1517–18 (11th Cir.1983); *Ashley v. City of Jackson*, 464 U.S. 900, 901–02, 104 S.Ct. 255, 256–57, 78 L.Ed.2d 241 (1983) (Rehnquist & Brennan, JJ., dissenting from the denial of certiorari). Some rules of law are designed to limit the authority of public officeholders, to make them return to other branches of government or to the voters for permission to engage in certain acts. They may chafe at these restraints and seek to evade them; if they do, the people for whose protection the restraints were created are entitled to repair to the forums designed to hear arguments that officeholders have acted without authority.

Our case involves arguments of exactly this sort. Amburn and Kingen believe that by consenting to build an entire new governmental complex and to sign leases that directly increase taxes, the defendants in this suit exceeded their authority as a matter of state law. Amburn and Kingen have chosen the forum designated by the state for the resolution of such claims. We cannot say that their claims are transparently frivolous. A court must be alert to the possibility that the consent decree is a ploy in some other struggle. Perhaps the defendants have been frustrated by their inability to win political approval for the construction of a new city hall for Muncie. The federal litigation may have offered an opportunity to achieve other goals, and the "consent" to build a whole governmental complex may have been what defendants received in exchange for giving plaintiffs what they wanted. See Donald L. Horowitz, *Decreeing Organizational Change: Judicial Supervision of Public Institu-tions*, 1983 Duke L.J. 1265, 1294–95; cf. *Chicago & Grand Trunk Ry. v. Wellman*, 143 U.S. 339, 345, 12 S.Ct. 400, 402, 36 L.Ed. 176 (1892) (feigned adversarial litigation does not support federal jurisdiction); *Firefighters*, 106 S.Ct. at 3077 (federal court is more than a recorder of private contracts). We do not imply that this particular decree was a conscious evasion or that the litigation became collusive; for all we know it remained adversarial, and the settlement is a genuine compromise. But people who were not parties to the consent decree are entitled to use the ordinary means to find out, and these means include challenging the authority of the governmental parties to act on behalf of the people of Indiana. The district court therefore was wise not to join Amburn and Kingen in the federal litigation.

AFFIRMED.

SWYGERT, Senior Circuit Judge, concurring.

I agree with the majority that the district court properly denied the federal parties' request to enjoin the state court tax suit. The Anti-Injunction Act, 28 U.S.C. § 2283, prohibits a federal court from granting such relief "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The request for an injunction was motivated by the federal parties' concern that the state tax case may interfere with the fulfillment of the consent decree. The parties have not established, however, that an injunction of the state court litigation is necessary to protect or effectuate the federal judgment. It is far from clear, at least at this point in time, that the state court's resolution of the tax claims will necessarily infringe upon the plaintiffs' rights. Given the presumption against federal interference with state court proceedings, *see Atlantic Coast Line RR v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 297, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970), I believe the district court was correct in allowing the state court proceeding to continue.

I do not believe, as the majority does, that the applicability of the "protect or effectuate" language contained in section 2283 depends upon whether the federal action ended in a consent decree. As the Supreme Court stated in *Local No. 93, International Association of Firefighters v. City of Cleveland*, —— U.S. ——, 106 S.Ct. 3063, 92 L.Ed.2d 403 (1986), "consent decrees 'have attributes both of contracts and of judicial decrees,' a dual character that has resulted in different treatment for different purposes." *Id.*, 106 S.Ct. at 3074 (quoting *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236 n. 10, 95 S.Ct. 926, 934 n. 10, 43 L.Ed.2d 148 (1975)). For purposes of section 2283, courts have treated consent decrees as judgments entitled to protection from inconsistent state court orders. *See, e.g., United States v. District of Columbia*, 654 F.2d 802 (D.C. Cir.), *cert. denied sub nom. Prince George's County v. United States*, 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981); *United States v. ASCAP*, 442 F.2d 601 (2d Cir.1971); *cf. New York State Association of Retarded Children, Inc. v. Carey*, 438 F.Supp. 440 (E.D.N.Y.1977) (although the court assumed it had the power to enjoin a third party from challenging a federal consent judgment in state court, the court determined that an injunction was not necessary to protect the consent judgment). Just as courts have used the "protect or effectuate" exception to prevent third parties from attacking final judgments, *see, e.g., Doe v. Ceci*, 517 F.2d 1203 (7th Cir.1975), they should be entitled to protect their consent decrees from third-party attack under appropriate circumstances. Whether the result of the state court tax suit will eventually furnish a basis for such action, however, is a question for another day.