936 F.2d 1182
 56 Fair Empl.Prac.Cas. 766,
56 Empl. Prac. Dec. P 40,890
Michael BARFUS, Jack Chambers, Michael Fisher, Darrell
Hawks, Edmund Lamb, Robert Robinson, Terry
Remland, Plaintiffs-Appellants,
v.
CITY OF MIAMI, Defendant-Appellee.
Robert J. SULLIVAN, Plaintiff-Appellant,
v.
CITY OF MIAMI, a municipal corporation, Defendant-Appellee.
 Nos. 89-5640, 89-5641.
 United States Court of Appeals,
Eleventh Circuit.
 July 26, 1991.
 
 Robert D. Klausner, Klausner & Cohen, P.A., Hollywood, Fla., for plaintiffs-appellants.
 Albertine B. Smith, Kathryn S. Pecko, Asst. City Attys., Law Dept., Miami, Fla., for defendant-appellee.
 Appeals from the United States District Court for the Southern District of Florida.
 Before CLARK and COX, Circuit Judges, and TUTTLE, Senior Circuit Judge.
 CLARK, Circuit Judge:
 
 
 1
 This is an appeal by Miami firefighters (Barfus et al.) and a Miami police officer (Sullivan) from the district court's dismissal of their Title VII action for reverse discrimination as an impermissible collateral attack on a consent decree. The district court dismissed the complaints pursuant to Fed.R.Civ.P. 12(b)(1), reasoning that because the complaints constituted collateral attacks, the court lacked subject matter jurisdiction over appellants' claims.[1] Because we hold that appellants' Title VII complaints do not constitute collateral attacks on the consent decree, and because appellants have standing to bring an independent Title VII suit, we reverse and remand to allow the district court to consider the merits of appellants' claims and to permit the City to file its answer and to present any defenses to appellants' charges of reverse discrimination.
 
 FACTS
 A. Litigation Resulting in Consent Decree
 
 2
 This litigation has its genesis in two suits filed by the United States against the City of Miami.[2] In the first, the United States filed suit against the City of Miami, city officials, the Fraternal Order of Police ("the FOP" or "the police union"),[3] and the Miami Police Benevolent Association, alleging discriminatory employment policies and practices against black, Spanish-surnamed, and female individuals. On February 18, 1976, the United States and the City filed a proposed consent decree, which was approved by the district court for the Southern District of Florida over objections to its entry by the FOP. After hearing argument on the FOP's motion to vacate the decree,[4] the district court directed the parties to attempt to resolve their differences regarding provisions of the decree. On November 17, the Attorney General and the City moved to reinstate the consent decree; with that motion, they filed, among other things, affidavits from the FOP and the City stating that they had been unable to resolve their differences. After a December 13, 1976 hearing on the motion for reentry of the decree, at which the court heard the FOP's objections to the decree, the court, again over the objections of the FOP, entered a modified decree proposed by the City and the United States which set forth promotional goals to increase minority employment. The date of entry of the consent decree was March 29, 1977. The FOP appealed, and that appeal ultimately was heard by this court sitting en banc.
 
 
 3
 In United States v. City of Miami,[5] we held that the modified consent decree was valid as between those parties consenting to its entry, i.e., the City and the United States, but that it was not valid as to provisions affecting the FOP as a nonconsenting party. The Court, therefore, held that "[t]he provisions of the court's decree shall be modified to provide that it does not affect the promotion of members of the Police Department. As thus restricted, we affirmed its reentry upon remand."[6]
 
 
 4
 On remand, the district court, on April 4, 1983, issued a consent order maintaining in full force and effect the earlier decree.[7] The court, there, stated:
 
 
 5
 The FOP accepts this order in resolution of all claims it has against the City of Miami concerning the prior promotional practices of the City of Miami in the implementation of the Consent Decree in the Police Department, including, but not limited to, the adoption and implementation of Ordinance No. 8977....[8]
 
 
 6
 The second suit against the City of Miami, filed by the United States on December 29, 1975, also alleged discriminatory employment practices against blacks, Latins, and women in violation of federal civil rights law. On March 29, 1977, the district court entered a consent decree between the City and the United States. The district court notes that on or about July 26, 1978, the International Association of Firefighters, AFL-CIO Local 587 ("the firefighters union") signed the consent decree.[9]
 
 B. Complaints
 
 7
 On October 28, 1987, appellants, white employees of the Miami Fire Department, filed a complaint against the City of Miami seeking a permanent injunction and restitution under Title VII, 42 U.S.C. Sec. 2000e et seq. In a separate action, appellant Lieutenant Robert Sullivan, on April 19, 1988, filed a complaint alleging reverse discrimination in the promotion practices of the Miami Police Department; he also alleged that he was denied administrative review of his promotion bypass. Both complaints allege that the City, which has operated under the terms of the court-approved consent decree since 1977, was obligated under the terms of the decree and the "Miami Civil Service Rules and Regulations" (Ordinance No. 8977) promulgated pursuant to the decree to meet certain promotional goals to enhance opportunities for minorities. Significantly, appellants claim that they were denied promotions in favor of less qualified black candidates in violation of Title VII, the consent decree, and Ordinance No. 8977.
 
 C. District Court
 
 8
 In dismissing appellants' complaints as impermissible collateral attacks on the consent decree, the district court reasoned that "because the unions of which the present Plaintiffs are members both signed the Consent Decree and were parties to the original discrimination suit out of which the present consent decree arose," the plaintiffs "may be properly characterized as 'parties or privies' to the Decree."[10] Acknowledging that "independent claims of unlawful discrimination are not precluded" simply because a consent decree is implicated,[11] the court nevertheless held that because the unions were signatories to the consent decree, the union members could not "collaterally attack" the decree by means of Title VII. In so holding, the court relied upon case law holding that a party or privy to a consent decree cannot launch a collateral attack upon the decree. Additionally, the court held that even if plaintiffs only challenged the City's compliance with the decree, i.e., even if plaintiffs were not "attacking" the decree, the district court lacked jurisdiction because enforcement of the decree was " 'under the supervision of the district court that entered the decrees.' "[12] The court, however, concluded that the plaintiffs were free to seek an order to show cause, from the court that entered the decree and that retained jurisdiction over it, why the City should not be held in civil contempt for misapplication of the consent decree.[13]
 
 DISCUSSION
 
 9
 While not quarreling with the law relied upon by the district court, we reverse because we do not deem plaintiffs' Title VII complaints to be an attack upon the consent decree. The complaints do not challenge the terms of the decree; nor do they seek to modify the decree.[14] Neither do we think that the complaints seek relief pursuant to the decree. We disagree with the district court's alternative conclusion that plaintiffs are limited in their relief to seeking sanctions in a contempt proceeding challenging the City's implementation of the decree. Moreover, even if appellants may challenge implementation of the decree as parties or privies through contempt, we know of no law so limiting their right to that relief under the facts alleged in the complaints.[15]
 
 
 10
 Appellants instituted this suit pursuant to Title VII; jurisdiction is vested in this court by 42 U.S.C. Sec. 2000e-5(f)(3). Theirs are individual and independent claims of reverse discrimination premised on Title VII, rather than an action seeking to enforce rights created in their favor by the decree. The firefighters, in their complaint against the City, seek permanent injunctive relief and restitution under Title VII, 42 U.S.C. Sec. 2000e et seq. They allege that:
 
 
 11
 18. Minority candidates for promotion who ranked below some or all of the Plaintiffs were promoted ahead of Plaintiffs, notwithstanding Plaintiffs' higher scores on the promotional examination.
 
 
 12
 19. Said minority candidates were accorded a preference in promotion based solely upon race and national origin.
 
 
 13
 20. But for their status as "Anglo" males, Plaintiffs would also have been promoted to the rank of fire lieutenant.
 
 
 14
 * * * * * *
 
 
 15
 25. In employing promotional goals in excess of those authorized by the Consent Decree, the City has transformed its affirmative action program into a form of reverse discrimination, creating a new class of victims of discrimination who are denied promotion based on factors other than merit.
 
 
 16
 26. As a result of the adoption of this pattern and practice, Plaintiffs have been deprived of promotion to the rank of fire lieutenant, together with the earnings and other benefits they would have received but for the discriminatory practices of the Defendant.[16]
 
 
 17
 Police Lieutenant Robert Sullivan also alleges reverse discrimination in the promotion practices of the Miami Police Department. As set forth in his complaint, Sullivan contends that:
 
 
 18
 14. The City of Miami, in the administration of its Civil Service System and the terms of the Consent Decree, is obligated to promote minority candidates in numbers equal to the Miami City work force population statistics or the percentage of minorities currently employed in the Department, whichever is smaller.
 
 
 19
 15. On August 22, 1984, the City of Miami, Department of Personnel Management, established a promotional register which ranked candidates based upon examination score for eligibility to be promoted to the rank of police captain.
 
 
 20
 * * * * * *
 
 
 21
 18. Minority candidates for promotion who were ranked below Plaintiff were promoted ahead of Plaintiff, notwithstanding his higher score on the promotional examination.
 
 
 22
 19. Said minority candidates were accorded a preference based solely upon race and national origin.
 
 
 23
 * * * * * *
 
 
 24
 27. In failing to promote Plaintiff, while at the same time according an additional preference to persons who had previously received a preference for promotion, the City has engaged in a practice of reverse discrimination, creating a new class of victims of discrimination who are denied promotion based on factors other than merit or lawful compliance with the Consent Decree.
 
 
 25
 * * * * * *
 
 
 26
 29. As a result of the actions complained of, Plaintiff has lost promotion to the rank of captain, together with pay, seniority, pension, credits and other emoluments of office.[17]
 
 
 27
 Thus, plaintiffs do not base jurisdiction solely on the consent decree.
 
 
 28
 Indeed, it is difficult to discern how this consent decree could be enforced by union members in a contempt proceeding, as the relief available under the terms of the decree runs to minorities discriminated against through the past hiring and employment practices of the City.[18] The decree, at paragraph 5, provides that "[i]n order to eliminate the effects of past discriminatory practices against blacks, Latins and women, the City shall adopt and seek to achieve as its long term goal the participation at all levels throughout its work force of blacks, Latins and women approximating their respective proportions in the City's labor force...."[19] Paragraph 7 of the decree, dealing with promotions, provides for promotion of members of the affected class. As defined in paragraph 6, the "affected class" of employees eligible for back pay under the decree includes (1) all incumbent black, Latin, and women employees currently holding positions with the City who were initially assigned to traditionally black, Latin, or female jobs and (2) all blacks, Latins and women identified as having been discriminatorily denied employment opportunities or terminated since March 24, 1972. Thus, because the decree confers on appellants no right, i.e., the relief available runs in favor of minority employees and applicants, the relief sought by appellants in this suit is outside the scope of the decree[20] and, instead, is from injury occurring as a result of the decree's alleged discriminatory application.
 
 
 29
 The district court recognizes the distinction between an enforcement action, on the one hand, and an independent Title VII action. In his order, he states: "Thus, while the Plaintiffs' claims may not technically have accrued until after the Consent Decree went into effect and their promotions were denied, certainly they 'share an identity of interest' with the unions of which they are members, such that they may properly be characterized as 'parties or privies' to the Decree."[21] The issue sought to be litigated here was not involved in the consent decree. Thus, it cannot be the case that these non-minority union members, by their union's participation in the consent decree negotiations, waived their right to bring a separate Title VII action. Because appellants' cause of action had yet to accrue, this is not a case in which, through the "adequate representation" of the union members' interests by their unions,[22] res judicata bars an independent action by the individual members.
 
 
 30
 The Supreme Court's reasoning in United States v. Armour Co. in this regard is instructive:
 
 
 31
 Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case....[23]
 
 
 32
 Simply stated the promotional rights of these eight non-minority employees and their entitlement to Title VII relief has yet to be litigated. Thus, the district court's determination that the union members are bound by the consent decree because the union was a signatory is an insufficient basis on which to deprive appellants of their Title VII cause of action.
 
 
 33
 In fact, the decree itself contemplates pursuit by individual employees of their own remedies:
 
 
 34
 (8)(c) Nothing in this Decree will be construed as limiting the rights of any individual as provided by Section 706 of Title VII, 42 US Code, Section 2000e-5.[24]
 
 
 35
 The decree appears to contemplate independent litigation of private causes of action, at least for minority plaintiffs (seeking, for example, back pay) who, for whatever reason, did not benefit from enforcement of the promotional provisions of the decree.[25] It is clear that such cases do not arise under the consent decree and that those potential minority plaintiffs are not limited in their ability independently to seek relief in an action outside the contempt proceeding. This being so, we are not inclined to limit the choice of remedies of non-minority employees.
 
 
 36
 Having determined that the court has subject matter jurisdiction over appellants' claims of reverse discrimination, the remaining issue is whether appellants have pled a separate Title VII cause of action. Here, as in Martin v. Wilks, the plaintiffs allege that because of their race, they are being denied promotions in favor of less qualified minorities in violation of federal law. Having reviewed the complaints, we easily conclude that plaintiffs have stated the essential elements of a Title VII violation sufficient to proceed beyond the pleading stage and to require the City to plead its affirmative defenses.
 
 CONCLUSION
 
 37
 In reversing and remanding to the district court so that the City of Miami may file its answer and plead any affirmative defenses, we intimate no view with respect to the ultimate disposition of this controversy. We merely hold that the complaint is not an attack upon the consent decree and that the plaintiffs do not seek relief pursuant to the decree. They seek relief under Title VII. Whether the consent decree provides a defense to plaintiffs' allegations of reverse discrimination is for the defendant to establish.
 
 
 38
 We REVERSE and REMAND so that the district court may consider plaintiffs' claims of unlawful discrimination.
 
 
 
 [1]
 "Order Granting Motions to Dismiss," Case No. 87-1984-Civ-Kehoe, 88-0697-Civ-Kehoe, May 25, 2989 (Sullivan v. City of Miami, R1-18-3-4). The district court entered a single order granting the City's motion to dismiss in the two cases, Barfus et al. v. City of Miami and Sullivan v. City of Miami, designated by the case numbers above. These cases were consolidated on appeal. In referring to the record on appeal, we indicate parenthetically by case name the record to which we refer
 
 
 [2]
 We recite only so much of the fifteen year history of this litigation as is relevant to this decision. This court's prior opinion sets forth a more detailed account of negotiations resulting in the consent decree. See United States v. City of Miami, 664 F.2d 435 (5th Cir.1981)
 
 
 [3]
 "Labor organizations" are defined in 42 U.S.C. Sec. 2000e(d) and are made potential defendants in unlawful employment practices cases
 
 
 [4]
 The FOP argued that the decree was " 'improvidently signed' because some of the activities that it required of the City violated some of the provisions of the collective bargaining agreement between the City and the FOP." United States v. City of Miami, 664 F.2d 435, 438 (5th Cir.1981)
 
 
 [5]
 664 F.2d 435 (5th Cir.1981) (en banc)
 
 
 [6]
 Id. at 449. The court also held that the Miami Police Benevolent Association, for reasons not relevant here, should have been dismissed from the litigation by the district court. City of Miami, 664 F.2d at 449. The Association was dismissed from the action by the district court on March 12, 1982
 
 
 [7]
 Consent Order, No. 75-3096-Civ-JWK, 79-2183-Civ-JWK, April 4, 1983
 
 
 [8]
 Id. at 4-5
 
 
 [9]
 The March 29, 1977 Consent Decree filed as supplemental authority with this court contains only the signatures of the United States and the City of Miami. The role of the firefighters' union, as defendant-intervenors in this second suit against the City, is difficult to determine from the record. The district court, in its June 1, 1983 order, resolves the "issues raised by the Second Amended Cross-Complaint in intervention filed by the International Association of Firefighters, Local 587." See, "Order Containing Findings of Fact and Conclusions of Law," No. 75-3096-Civ-JWK, June 1, 1983. The record on appeal does not indicate the date on which the firefighters' union was granted intervention, nor at what stage of the litigation they intervened as defendants. The record also does not include the union's motion for intervention, setting forth its claimed interest in the litigation. Finally, absent the district court's assertion of fact, the record does not indicate that the firefighters' union, in fact, signed the consent decree referred to by the district court in its June 1, 1983 order, i.e., the March 29, 1977 decree to which the firefighters' union "was a signatory."
 
 
 [10]
 In his "Order Granting Motion to Dismiss" which is currently on appeal before this court, the district judge states that
 [o]n April 4, 1983, this Court issued a Consent Order maintaining in full force and effect an earlier Consent Decree entered by United States District Judge Joe Eaton on March 29, 1977. United States v. City of Miami, Case Nos. 85-3096-Civ, 79-2183-Civ (S.D.Fla. April 4, 1983). This Consent Decree was signed by the Professional Firefighters of Miami, Local 587, International Association of Firefighters, AFL-CIO ("the Firefighters' Union") and the Fraternal Order of Police ("the FOP"). These Unions likewise were parties to the original actions out of which the Decree arose.
 R1-18-1-2.
 
 
 [11]
 "Order Granting Motion to Dismiss," R1-18-3 (citing In re Birmingham Reverse Discrimination Employment Litigation, 833 F.2d 1492, 1498 (11th Cir.1987))
 
 
 [12]
 "Order Granting Motion to Dismiss," R1-18-4 (citing Thaggard v. City of Jackson, 687 F.2d 66, 68 (5th Cir.), cert. denied sub nom. Ashley v. City of Jackson, 464 U.S. 900, 104 S.Ct. 255, 78 L.Ed.2d 241 (1983))
 
 
 [13]
 On January 9, 1990, the district court entered an order denying the motion of the Firefighters' Union to dissolve or modify the consent decree. That order is the subject of this court's review in United States; Sanitation Employees Assoc., Inc. v. City of Miami, et al.; Fire Fighters Local AFL-CIO, No. 90-5107
 
 
 [14]
 Black's Law Dictionary defines a "collateral attack" as follows:
 With respect to a judicial proceeding, an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it.
 Black's Law Dictionary 237 (5th ed. 1979). Appellants, in their brief, contend:
 The Firefighters and Police Lieutenant Sullivan both contend that the City has violated the terms of its own consent decree by promoting less qualified persons over more qualified persons and for according preferences to persons who have already received them....
 Brief for Appellants, at 13. The district court also noted that appellants argued that "rather than challenging the Decree itself, they simply are contesting its misapplication." "Order Granting Motion to Dismiss," R1-18-4.
 This case should be distinguished from In re Birmingham Reverse Discrimination Employment Litigation, 833 F.2d 1492, 1498 (11th Cir.1987), aff'd sub nom. Martin v. Wilks, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), involving a collateral attack on the consent decrees. There, the plaintiffs/white firefighters sued the City and the Alabama Personnel Board alleging
 that they were being denied promotions in favor of certain black firefighters whom they asserted were less qualified, and asked the court to enjoin the City from making those promotions. Maintaining that "[t]he defendants are certifying candidates and making promotions on the basis of race under the assumed protection of the consent settlements," the seven white firefighters alleged that the City and the Board were engaged in a practice or pattern of discrimination and were intentionally favoring blacks over whites in violation of Title VII and the equal protection clause of the fourteenth amendment.
 Id. at 1495. Appellants here, on the other hand, do not argue that actions taken pursuant to the decree resulted in discrimination. Rather, appellants in their complaint allege that the City, by failing to comply with the terms of the consent decree and civil service rules enacted in accordance with the decree setting forth promotion practices, has violated Title VII.
 
 
 [15]
 Cf. Jones v. Local 520, International Union of Operating Engineers, 603 F.2d 664 (7th Cir.1979) (consent decree in government civil rights action against union enforceable by union members--in separate Sec. 1981 cause of action--who were "seeking not to attack the consent decree, but to recover on the basis of beneficiary rights which it confers.")
 
 
 [16]
 Barfus et al. v. City of Miami, "Complaint for Violation of Title VII of the Civil Rights Act of 1964," R1-1
 
 
 [17]
 Sullivan v. City of Miami, "Complaint for Violation of Title VII of the Civil Rights Act of 1964" (R1-1). Compare Cicirello v. New York Telephone Co., 123 F.R.D. 523, 525 & n. 4 (E.D.Pa.1989) (court in contemplating standing of plaintiff as a nonsignatory to consent decree to sue to enforce the decree noted that "jurisdiction of plaintiff's complaint [was] based solely on the Decree. Plaintiff brings no individual claim of discrimination in this action; such claims appear to have been exhausted or resolved in other actions.")
 
 
 [18]
 Thus, for example, appellants, as non-minority employees, would not appear to be either intended or incidental beneficiaries who could claim standing to sue pursuant to Fed.R.Civ.P. 71: "When an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if a party...." See also Virgo v. Local Union 580, 107 F.R.D. 84 (S.D.N.Y.1985) ("This plaintiff is a member of a class expressly designated in and benefitted by the consent judgment and has beneficiary rights thereunder. Since the consent judgment was entered in his favor, he may, pursuant to Fed.R.Civ.P. 71, enforce obedience to it by the same process as if he were a party to the EEOC action. Thus, if the Union deprived Virgo of these beneficiary rights because of his race, as he alleges, he may assert a cause of action under 42 U.S.C. Sec. 1981.")
 
 
 [19]
 The decree is set forth in its entirety as an appendix to the panel opinion at 614 F.2d 1322, 1342-51 (5th Cir.1980)
 
 
 [20]
 Cf. Terminal R. Ass'n of St. Louis v. United States, 266 U.S. 17, 45 S.Ct. 5, 69 L.Ed. 150 (1924) ("As the original decree does not prescribe charges or fix divisions of joint rates, contempt proceedings will not lie to determine whether the west side lines have paid more than their fair share of the charges for the services rendered by the Terminal Association.... The refusal or failure of the east side lines to pay the charges in controversy or any other transfer charge is not contempt of court.")
 
 
 [21]
 "Order Granting Motion to Dismiss," R1-18-3-4
 
 
 [22]
 See, e.g., Mann v. City of Albany, 883 F.2d 999 (11th Cir.1989) (although plaintiff, Mann, was not a party to original litigation resulting in consent decree, "a factual finding that the City 'virtually represented' Mann's interests" in the underlying litigation would render the consent decree "binding on him under the rules of res judicata.")
 
 
 [23]
 402 U.S. 673, 681, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971) (emphasis added); see also Meza v. General Battery Corp., 908 F.2d 1262, 1273 (5th Cir.1990) ("For a prior judgment to have preclusive effect as to a particular issue, the doctrine of collateral estoppel requires that: (1) the issue at stake be identical to the one involved in the prior litigation; (2) that the issue has been actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action.)
 
 
 [24]
 With respect to the filing of a civil action by an aggrieved person, 42 U.S.C. Sec. 2000e-5(f)(1) provides in pertinent part that
 a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved....
 
 
 [25]
 See United States v. City of Miami, 664 F.2d 435, 444 (5th Cir.1981) ("No person having a claim for backpay is precluded from separately asserting it.")