UNITED STATES of America, Plaintiff,

v.

AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS, Defendant.

In the Matter of the Application of Steve KARMEN, Petitioner, for an Order Vacating or Modifying a Arbitration Award.

Civ. No. 13–95 (WCC).

United States District Court,
S.D. New York.

Sept. 7, 1993.

---

Charles M. Newman, Neal R. Platt, New York City, for petitioner.

Bernard Korman, New York City, for AS-CAP.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Petitioner Steve Karmen, a writer of commercial jingles, returns to this Court whistling a new and catchy tune. By Opinion and Order issued June 26, 1992, this Court denied petitioner's second request to vacate the decision of a panel of arbitrators disposing of a dispute between the American Society of Composers, Authors and Publishers ("ASCAP") and petitioner, a member of ASCAP. Karmen and ASCAP had previously agreed that petitioner's request should go forward in this Court, ostensibly due to this Court's continuing jurisdiction over a consent judgment, originally entered in 1941 and subsequently amended in 1950, between the United States and ASCAP (the "Consent Decree" or "Amended Final Judgment"). Petitioner Karmen now moves to vacate entirely this

Court's June 1992 Opinion on the ground that this Court lacked subject matter jurisdiction to hear his claims.[1]

## BACKGROUND

Petitioner Karmen, the writer of an extensive body of successful jingles, has been a member of ASCAP since 1972. Persons such as Karmen join ASCAP so that their creative works may be licensed and they may share in the profits produced therefrom. Section XI of the Consent Decree requires, in general terms, that ASCAP make distributions to its members on a basis which gives primary consideration to objective surveys designed to determine the number of performances of their compositions. The system of distribution and classification is explained in detail in Attachments to a 1960 Order of this Court (the "1960 Order") further amending the Consent Decree.

■ Attachment "C" to the 1960 Order contains the "Weighting Rules," deemed to be part of the Consent Order, which specify the limits within which ASCAP may make distinctions in weighting different kinds of performances. A separate "Weighting Formula," printed with the 1960 Order but not deemed to be part of the Consent Order, establishes the precise weight given to each type of performances. As with the broader Consent Decree, changes to the Weighting Rules must be made by way of amendment effected with the approval of this Court. Members of ASCAP are given notice of the proposed amendment and an opportunity to show this Court why the proposed changes are not consistent with the underlying objective of the Consent Decree. ASCAP may alter the Weighting Formula independently, within the confines of the Weighting Rules, merely upon 30 days written notice to the Government. Any objection the Government may have to the proposed change are to be heard in this Court.

---

1. A notice of appeal from the Opinion was filed with the jurisdictional concerns noted in the preliminary appeal forms. The Second Circuit's Staff Counsel, in a pre-argument conference as part of the Civil Appeal Management Plan, suggested that the District Court consider the jurisdictional questions before they were presented to the Second Circuit. Consequently, the appeal was temporarily withdrawn without prejudice and petitioner was permitted to file this motion.

When Karmen joined ASCAP, jingles were given a one percent "use credit" under the Weighting Formula. In 1981, after much lobbying by jingle writers for a higher value on jingles, ASCAP's Board of Directors sought to increase the value from one percent to three percent. The Government approved the increase. This decision to accord a three percent use credit to jingles underlies Karmen's ongoing dispute with ASCAP. Karmen initially pursued his claim under the procedures mandated by the 1960 Order and instituted by ASCAP's Articles of Association. *See* 1960 Order § V(D); ASCAP Articles of Association, art. XIV, § 6B. In accordance with these procedures, Karmen's complaint was first heard by ASCAP's Board of Review (the "Board") where petitioner, represented by counsel, called a number of witnesses and presented several exhibits during the course of a three-day hearing. In a twenty-six page decision, the Board denied petitioner's request to replace the three percent rule with one giving a greater weight for jingles. Karmen thereafter exercised his right to present his claim to a panel of the American Arbitration Association (the "Panel") which subsequently affirmed the decision of the Board.

Petitioner then applied to this Court to vacate the decision of the Panel on grounds that he had been denied due process of law and that the Panel's refusal to conduct a trial de novo constituted misconduct. In an Opinion and Order dated March 30, 1989, the Court held petitioner's due process claim to be untenable, but remanded the matter to the Panel for further consideration because there was no indication that the Panel knew it could hear improperly excluded evidence or re-evaluate the Board's factfinding. In the ensuing proceeding before the Panel, AS-CAP produced its former chief economist and three members of its Board of Directors as witnesses. In addition, the Panel received post-hearing briefs on the scope of the Panel's authority to grant the relief sought by petitioner. The Panel then concluded that the rule in question was void as arbitrary, but refused to legislate a new rule, remanding the matter to the Board for further consideration.

Petitioner again applied to this Court to vacate the Panel's decision, claiming the decision was not final because the Panel merely voided the three percent rule and failed to legislate a new rule or specifically direct ASCAP's Board to do so. In the alternative, petitioner solicited the Court to determine on its own the weight ASCAP should accord to jingle performances. This Court rejected petitioner's claims in an Opinion and Order dated June 26, 1992, finding that the Panel's decision was final in that it exhausted the Panel's mandate, and holding that petitioner lacked standing to invoke the power of the Court to set the proper weight for jingle performances.

Karmen now stands in the peculiar position of moving to vacate entirely the June 26, 1992 Order on grounds that this Court lacked subject matter jurisdiction to hear claims petitioner himself twice brought to this Court with ASCAP's agreement.

### DISCUSSION

■ The sole issue presented by this motion to reconsider is whether this Court lacked subject matter jurisdiction to entertain petitioner's application to vacate the arbitration panel's award. Karmen's moving memorandum contends that there is no constitutional or statutory grant of jurisdiction in this case. Although the Federal Arbitration Act (FAA), 9 U.S.C. § 10, provides that federal courts having subject matter jurisdiction over a proceeding may entertain applications seeking to vacate arbitration awards, the FAA does not purport to confer upon federal courts subject matter jurisdiction to entertain all applications to enforce, modify or vacate an arbitrator's award. *See Harry Hoffman Printing v. Graphic Com., Int'l. Union, Local 261,* 912 F.2d 608, 611 (2d Cir.1990) ("we have consistently held that Congress did not intend the Arbitration Act as a grant of jurisdiction. There must be an independent basis of jurisdiction before a district court may entertain petitions under the Act.") (citing *Ballantine Books, Inc. v. Capital Distrib. Co.,* 302 F.2d 17, 19 (2d Cir.1962); *Metro Indus. Painting Corp. v. Terminal Constr. Co.,* 287 F.2d 382, 384 (2d Cir.), *cert. denied,* 368 U.S. 817, 82 S.Ct. 31, 7

L.Ed.2d 24 (1961)); *see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983) (Arbitration Act "does not create any independent federal-question jurisdiction"). Karmen argues that his petition to vacate the arbitration panel's award was not supported by an independent basis of federal subject matter jurisdiction: the application did not present a question arising under the Constitution, laws or treaties of the United States, nor could federal jurisdiction be predicated upon diversity of citizenship.[2] Pet. Memo. at 11–14.

■ Karmen also argues that subject matter jurisdiction may not be predicated on this Court's continuing jurisdiction over the ongoing implementation of the Consent Decree. Section XVII of the Decree provides that:

> Jurisdiction of this cause is retained for the purpose of enabling *any of the parties to this Amended Final Judgment* to make application to the Court for such further orders and directions as may be necessary or appropriate in relation to the construction of or carrying out of this Judgment, for the modification thereof, for the enforcement of compliance therewith and for the punishment of violations thereof.

(emphasis added). While the United States and ASCAP, being parties to the Consent Decree, may invoke the Court's jurisdiction under this Section, Karmen, being a nonparty to the Decree, may not. Pet. Reply Memo. at 3.[3]

■ In characterizing the nature of his claim, Karmen is quick to point out that his application in no way seeks to modify or enforce the terms of the Consent Decree. Pet. Memo. at 9–11; Pet. Add'l. Memo. at 4–8. Karmen maintains that his application is addressed to the arbitration panel's award rather than to the Consent Decree. A member's obligation to arbitrate disputes arises under ASCAP's Articles of Association and membership agreement. *See* ASCAP Articles of Association, art. XIV, § 6B. The authority of the arbitration panel, argues Karmen, thus finds its source in a contract, arising under state law and enforceable in a state court. Because the Consent Decree does not specifically retain this Court's jurisdiction to hear appeals from the Panel's award, concludes Karmen, applications to enforce, modify or vacate such an award must be filed in a New York state court. *See* Pet. Add'l. Memo. at 4–7.

We disagree with Karmen's characterization of his application. Karmen's obligation to arbitrate disputes under ASCAP's Articles of Association and membership agreement was compelled by this Court's 1960 Order, further amending the Consent Decree. *See* 1960 Order § V(D).[4] The authority of the arbitration panel and the nature of the relief permitted are specifically dictated by the provisions of the 1960 Order. *See id.* Pursuant to the entry of the 1960 Order, ASCAP's Articles of Association were amended to conform to the terms of that Order; the authority of the arbitration panel is stated in the Articles of Association in precisely the

---

**2.** Karmen is a citizen of the state of New York, while ASCAP is an association organized and existing under the laws of the State of New York, maintaining its principal place of business in New York City.

**3.** Karmen also notes that the word "exclusive" does not appear anywhere within Section XVII of the Consent Decree in response to ASCAP's contention that this Court retains exclusive jurisdiction over applications properly arising under this Section. Karmen's reliance on the absence of the term "exclusive" is misplaced. *See United States v. ASCAP (Zekley),* 442 F.2d 601, 603 (1971) ("[t]he need for exclusive jurisdiction in the federal district court was recognized when [Section XVII] was included in the Amended Final Judgment of 1950."). As our discussion will indicate, we believe this Court must retain

exclusive jurisdiction over matters relating to the construction and enforcement of the Consent Decree as well as any Orders further amending the Decree.

**4.** The 1960 Order provides, in pertinent part that:

> Each member shall have a direct right of appeal from any decision made by such board to an impartial panel of the American Arbitration Association. In any appeal to such impartial panel from an adverse decision by such board, the appellant may seek to have the order, rule or regulation involved properly interpreted or applied, to have errors rectified, or to void such rule or regulation on grounds of its discriminatory or arbitrary character.

1960 Order § V(D).

same language as in the Order. *Compare* ASCAP Articles of Association, art. XIV, § 6B *with* 1960 Order § V(D). Thus Karmen's application does not merely raise questions of contract interpretation and enforcement under state law, but necessarily requires a court to construe and enforce the terms of the Consent Decree as amended by this Court's 1960 Order.

Both forms of relief sought by Karmen required this Court to construe and apply either the Consent Decree or the 1960 Order. Karmen initially petitioned the Court to vacate or modify the Panel's award on the ground that it was not "final and definite" because the Panel failed to legislate a higher weight for jingles or direct ASCAP's Board of Directors to do so. The question raised as to whether the Panel had exhausted its power specifically necessitated an interpretation of the limits imposed on the Panel's authority under Section V(D) of the 1960 Order. In the alternative, Karmen solicited the Court to conduct its own evidentiary hearing and determine the proper weight to be accorded to jingle performances. Under ASCAP's membership agreement and Articles of Association, pursuant to the Consent Decree and the 1960 Order, only ASCAP's Board of Directors has the authority to establish performance weights. The Court may rule only if a proposed change is objected to by the United States Government and this Court's jurisdiction is thereby invoked to determine whether the change is consistent with the aims of the Consent Decree and Orders issued pursuant thereto. Thus Karmen's request for alternative relief implicated questions as to the Court's power under the Consent Decree and the 1960 Order, and required a ruling as to Karmen's standing to sue for enforcement of the Consent Decree.

In short, we believe petitioner's application necessarily invoked this Court's inherent jurisdiction to construe and enforce the Consent Decree as well as its own Judgments and Orders. The Court thus heard Karmen's petition under its exclusive jurisdiction to decide claims governed by the Consent Decree and subsequent Orders further amending the Decree.[5] *Cf. United States v. International Broth. of Teamsters*, 907 F.2d 277 (2d Cir.1990) (enjoining all members of the International Brotherhood of Teamsters ("IBT") from litigating issues related to a Consent Decree between the IBT and the Government in any court other that the Southern District of New York); *United States v. ASCAP (Zekley)*, 442 F.2d 601, 603 (2d Cir.1971) (enjoining ASCAP member from prosecuting state court action related to distribution of licensing fees based on the necessity to retain exclusive jurisdiction in this Court over questions pertaining to the Consent Decree).

The need to retain the Court's jurisdiction over such matters arises from the imperative of avoiding the risk of subjecting the Consent Decree to inconsistent interpretations that would tend to interfere with or frustrate this Court's jurisdiction over the Decree. In this regard, Karmen maintains that the relief he would seek from a state court, once it was found that this Court lacked subject matter jurisdiction to hear his application, would not interfere with the Consent Decree and Orders pursuant thereto, or with this Court's ongoing jurisdiction over the implementation of the Decree's provisions. *See* Pet. Add'l. Memo. at 4–9. The very fact of this motion and the ultimate relief Karmen openly seeks belies this assertion.

This Court has already considered and ruled on the same application Karmen acknowledges he presently seeks to file in state court. The Court denied Karmen the relief he sought, finding that the arbitration panel's decision was final in that it had exhausted the Panel's mandate under the 1960 Order and, additionally, holding that petitioner lacked standing to invoke the power of the Court to set the proper weight for jingle performances. As already noted, the Court's decision was based on its interpretation of the Consent Decree and the 1960 Order.

---

5. We note that the Government concurs with ASCAP in the belief that this Court retains the jurisdiction to entertain applications such as the one presented by petitioner, where the questions presented mandate the interpretation and application of the Consent Decree and the Court's own Judgments and Orders issued pursuant to the Decree. *See* Letter of Gregory Hovendon, Attorney for the United States, dated August 23, 1993.

Upon getting our Opinion and Order vacated for want of jurisdiction, Karmen plans to proceed to a New York state court in the hopes of obtaining an interpretation of AS-CAP's Articles of Association and membership agreement that is directly contrary to the construction of the Consent Decree and the 1960 Order it is now apparent this Court would give them.

The ultimate relief sought by Karmen—to have the Panel legislate a new weight for jingles or specifically direct ASCAP's Board of Directors do so, or to have a court set a new weight—would directly interfere with the regime established under the Consent Decree and the Court's 1960 Order. One of the principal aims of the Consent Decree and the 1960 Order is to assure that royalty distributions are based on a scientific survey of performances and a fair set of distribution rules. *See* Consent Decree, Section XI; 1960 Order, § III(E) and Attachment C. Changes to the Weighting Rules created by the 1960 Order may only be made by way of amendment, effected with the approval of this Court. The Weighting Formula Karmen seeks to alter is the linchpin of the distribution system established pursuant to the issuance of the 1960 Order. While Karmen seeks only to increase the weight accorded to jingle performances, increasing the weight of one type of performance obviously diminishes the portion of the "pie" remaining to be distributed among the other surveyed performances.

The Consent Decree and 1960 Order, the Articles of Association, and the membership agreement vest in ASCAP's Board of Directors the power to make changes to the Weighting Formula, within the confines of the Weighting Rules. Objections by the Government to the changes proposed by the Board of Directors are to be heard in this Court. Thus, as ASCAP explains, all of AS-CAP's members have the right to expect that changes to the weights accorded their compositions will be made by the Board of Directors, under the surveillance of the Government, and subject to review by this Court, not by an arbitration panel or by any other court, as Karmen would prefer. To permit another court or an arbitration panel to ad-just performance weights on an ad hoc basis would frustrate the rights and expectations of ASCAP's members under the Consent Decree and 1960 Order, and interfere with the entire system implemented under this Court's jurisdiction.

Moreover, to hold that this Court lacked jurisdiction to hear Karmen's application would produce a peculiar result. Had Karmen obtained the relief he sought from the arbitration panel in the first instance, there is no doubt that this Court would have jurisdiction under Section XVII of the Consent Decree to hear ASCAP's application to vacate the arbitration panel's award. *See* Consent Decree, Section XVII (retaining this Court's jurisdiction over applications made by parties to the Consent Decree to construe, modify or enforce the Decree). To hold that the Court now lacks jurisdiction over the same subject matter because Karmen lost his plea before the Panel and must therefore be the party applying for vacatur, would be to exalt form over substance and create an anomaly incompatible with the realities of the jurisdiction retained in this Court to oversee the ongoing implementation of the Consent Decree.

We note that ASCAP maintains that this Court had jurisdiction over this matter directly under Section XVII of the Consent Decree because ASCAP joined Karmen in requesting the Court to hear Karmen's application. *See* ASCAP Supp.Memo. at 3–6. We choose not to decide now whether ASCAP's consent to Karmen's application in this Court constitutes as application by ASCAP within the province of Section XVII of the Consent Decree. Rather, we are content to hold that this Court obtained jurisdiction over Karmen's application by virtue of its exclusive jurisdiction to decide claims governed by the Consent Decree and the Court's subsequent Orders amending the Decree.

We also note that if Karmen had proceeded initially in state court, sufficient authority exists in this Circuit empowering us to enjoin and remove such a proceeding under the All Writs Act, 28 U.S.C. § 1651 (1988). *See United States v. International Broth. of Teamsters,* 907 F.2d 277 (2d Cir.1990); *United States v. City of New York,* 972 F.2d 464

(2d Cir.1992); *Yonkers Racing Corp. v. City of Yonkers,* 858 F.2d 855 (2d Cir.1988), *cert. denied,* 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 833 (1989); *Ludlow Park Home-owners Ass'n. v. County of Westchester,* 741 F.Supp. 1126, 1129 (S.D.N.Y.1990), *aff'd,* 930 F.2d 909 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 61, 116 L.Ed.2d 37 (1991); *cf. United States v. ASCAP (Zekley),* 442 F.2d 601 (1971). As already indicated, the prospect of Karmen's application proceeding in state court poses a significant risk of subjecting the Consent Decree to inconsistent interpretation, thus interfering substantially with the Court's jurisdiction under the Decree. To the extent that the Court may have sought to effectuate its jurisdiction through the use of this extraordinary writ under different circumstances, we agree with ASCAP that the fact Karmen proceeded directly in this Court should not change this result.

### CONCLUSION

For the reasons stated above, the Court holds that it had subject matter jurisdiction to hear petitioner's application.

SO ORDERED.