**UNITED STATES of America, Plaintiff,**

v.

**AMERICAN SOCIETY OF COMPOS- ERS, AUTHORS AND PUB- LISHERS, Defendant.**

**In the Matter of the Application of Steve KARMEN, Petitioner,**

**for an Order Vacating or Modifying an Arbitration Award.**

Civil A. No. 13–95 (WCC).

United States District Court, S.D. New York.

Feb. 5, 1996.

Charles M. Newman, New York City and Neal R. Platt, New York City, for Petitioner Steve Karmen.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Allan Blumstein, Jean H. McMahon, of counsel), White & Case, New York City (I. Fred Koenigsberg, of counsel), and American Society of Composers, Authors and Publishers, New York City (Ross Charap, of counsel), for Defendant American Society of Composers, Authors and Publishers.

### *OPINION AND ORDER*

WILLIAM C. CONNER, Senior District Judge:

Petitioner Steve Karmen has once again sought this court's intervention in his long-running dispute with the American Society of Composers, Authors and Publishers ("AS-CAP") over the amount of royalties that he receives for performances of his compositions. For the reasons set forth below, petitioner's application is denied.

### BACKGROUND

ASCAP is an unincorporated membership society of over 50,000 music composers, lyricists and publishers who own the copyrights to more than four million musical compositions. Each member has granted ASCAP a non-exclusive right to license the public performance rights to his or her compositions. ASCAP serves as licensing agent and collects royalties.

ASCAP operates under a consent judgment ("Consent Decree"), originally entered in 1941 and subsequently amended, that settled an antitrust suit brought by the United States against ASCAP. This court has retained jurisdiction under Section XVII of the Consent Decree to oversee its ongoing implementation. Section XI of the Consent Decree sets forth the general terms under which ASCAP is required to distribute the royalties that it collects to its members. The distribution system is outlined in detail in attachments to an order of this court dated January 7, 1960 ("1960 Order") that amends the Consent Decree. Attachment C to the 1960 Order contains the weighting rules, which are deemed to be part of the Consent Decree and which establish the guidelines within which ASCAP may assign different weights to different kinds of performances. A separate weighting formula establishes the precise weight given to each type of performance. ASCAP may unilaterally alter the weighting formula, within the limits set by the weighting rules, upon thirty days' written notice to the government. Any objection that the government may have to the proposed changes is to be heard in this court.

Petitioner Karmen, the writer of an extensive body of successful commercial jingles, has been a member of ASCAP since 1972. When Karmen joined ASCAP, the weighting formula awarded 1% of a use credit for each performance of a jingle.[1] In 1981, after extensive lobbying by jingle writers for a higher value, ASCAP's Board of Directors proposed an increase in the value from 1% to 3%. The government approved the increase. Karmen was not satisfied with the Board's action and filed a protest in accordance with the procedure mandated by the 1960 Order and set forth in ASCAP's Articles of Association. *See* 1960 Order, at § V(D), attached as Exhibit B to Affidavit of Jean H. McMahon, dated June 16, 1995; ASCAP Articles of Association, art. XIV, at § 4, attached as Exhibit C to McMahon Aff. Karmen's complaint was first heard by ASCAP's Board of Review ("Board"). After a lengthy proceeding, the Board denied petitioner's request to replace the 3% rule with one giving a greater weight to jingles. Karmen thereafter exercised his right to appeal the Board's decision to a panel of the American Arbitration Association ("Panel"), which affirmed the decision of the Board.

Petitioner next applied to this court, under N.Y.Civ.Prac.L. & R. § 7501 *et seq.*, to vacate the decision of the Panel on the grounds that petitioner had been denied due process of law and that the Panel's refusal to conduct a trial *de novo* constituted misconduct. On

---

**1.** The use credit is ASCAP's basic unit for the purposes of calculating royalty distributions.

March 30, 1989, we held that petitioner's due process claim was untenable but remanded the matter to the Panel for further consideration because there was no indication that the Panel knew that it could hear improperly excluded evidence or re-evaluate the Board's factfinding. *See United States v. AS-CAP/Application of Steve Karmen*, 708 F.Supp. 95 (S.D.N.Y.1989). In April 1991, the Panel concluded that the 3% rule was void because it was arbitrary but did not set a new weight for jingles. Instead, the Panel remanded the matter to the Board for further consideration.

In September 1991, after holding several meetings to discuss this issue, the Board reinstated the 3% rule and made certain other changes to the weighting formula. AS-CAP estimated that the changes would have the effect of increasing the amount of credits awarded to jingle performances by about 16%.

Karmen again applied to this Court to vacate the Panel's decision, claiming that the decision was not final because the Panel failed to establish a new weight or to direct ASCAP's Board to do so. In addition, petitioner requested this court to determine the weight that ASCAP should accord to jingle performances. We denied petitioner's application on June 26, 1992. We held that the Panel's decision was final because it exhausted the Panel's mandate and that petitioner lacked standing to invoke the power of this court to set the weight for jingle performances. *See United States v. ASCAP/Application of Steve Karmen*, 1992 WL 167383 (S.D.N.Y. June 26, 1992). Karmen then moved to vacate that order on the ground that this court lacked subject matter jurisdiction to hear the claims that petitioner himself had raised before the court. On September 7, 1993, we denied petitioner's motion. We held that we had subject matter jurisdiction over petitioner's application by virtue of our ongoing responsibility under Section XVII of the Consent Decree for construing and enforcing the Consent Decree, as amended by the 1960 Order. *See United States v. AS-CAP/Application of Steve Karmen*, 832 F.Supp. 82 (S.D.N.Y.1993). On August 22, 1994, the Second Circuit affirmed our decisions on both motions. *See United States v. ASCAP/Application of Steve Karmen*, 32 F.3d 727 (2d Cir.1994).

On October 3, 1994, petitioner sent a demand letter to ASCAP. Petitioner contended that as a direct result of his protest, the jingle rate was increased 16%. He argued that under Section V(D) of the 1960 Order and Article XIV, § 4, of ASCAP's Articles of Association, ASCAP was obligated to pay him that 16% increase from the date on which he registered his complaint. Petitioner therefore requested payment in the amount of 16% of the royalties that he received from ASCAP between 1981 and September 1991, when the changes to the weighting formula took effect. Karmen also asked for an accounting of payments made to jingle writers after September 1991 in order to establish that the 16% increase had, in fact, occurred. Finally, in the event that the accounting established that the 16% increase had not actually occurred, he sought payment for any deficiency in the amount of royalties that he has received since September 1991. *See* Exhibit A, attached to Affidavit of Steve Karmen, dated May 1, 1995.

An exchange of correspondence among petitioner, ASCAP and the government followed. ASCAP and the government took the position that petitioner was not entitled to the payments that he sought. *See* Letter of Ross Charap, dated Dec. 5, 1994, attached as Exhibit D to Karmen Aff.; Letter of Maureen T. Casey, dated Jan. 9, 1995, attached as Exhibit F to Karmen Aff. When ASCAP did not comply with petitioner's demands, petitioner filed the instant application. He requests this court to compel ASCAP to grant him the relief that he sought in his demand letter.

## DISCUSSION

ASCAP contends that we need not, and indeed may not, reach the merits of petitioner's application because petitioner has failed to exhaust his remedies. ASCAP relies on a provision in Section V(D) of the 1960 Order, which states that the Board "shall have jurisdiction in the first instance over every complaint by a member relating to the distribution of ASCAP's revenues to such member or

to any rule or regulation of [ASCAP] directly affecting the distribution of [ASCAP's] revenues to such member." *See also* ASCAP Articles of Association, art. XIV, at § 4. ASCAP asserts that petitioner's application is a complaint relating to the distribution of ASCAP's revenues, that this complaint is not part of the previous proceedings and that petitioner must therefore file a complaint with the Board rather than applying to this court. Karmen counters that he is not required to follow the complaint procedure before filing this application because he did so already and the process resulted in an award in his favor of a 16% increase in credits for jingle writers. He contends that he is before this court only to enforce that award.

■ With respect to petitioner's request for retroactive payment covering the period from 1981 to 1991, we are not persuaded by ASCAP's exhaustion argument. Petitioner's claim for retroactive payment is based on Section V(D) of the 1960 Order, which provides that:

> [a]ny additional amounts finally determined by the decision of [the Board] (or, in the case of any appeal, by [the Panel]) to be due to a member with respect to the distribution complained of by such member and all subsequent distributions to the date of the decision *shall be paid* to the member promptly after the rendering of such decision.

(Emphasis added); *see also* ASCAP Articles of Association, art. XIV, at § 4. The question of whether petitioner is entitled to the retroactive application of any award that he may have won is therefore not a matter over which the Board has decisionmaking authority. Instead, it is a matter of the interpretation of the 1960 Order: either the Panel awarded an "additional amount" to Karmen, in which case he is entitled to retroactive application of that award, or the Panel did not make such an award, in which case he is not. Hence, petitioner's request for retroactive application of the September 1991 changes to the weighting formula is not a

matter that the Board must consider in the first instance. Petitioner's application, although it is not captioned as such, is in effect a motion under N.Y.Civ.Prac.L. & R. § 7501 *et seq.* to enforce the award that he contends he won at arbitration. We may undoubtedly consider this application, as its disposition requires this court to construe the 1960 Order.[2] Therefore, we must address the merits of petitioner's request for retroactive payment.

■ Petitioner's argument is fatally flawed, however, because the Panel did not award petitioner the 16% increase that he contends he won. The 1960 Order is quite explicit in describing the limits of the Panel's power. On an appeal to the Panel from a determination made by the Board, an appellant "may seek to have the order, rule or regulation involved properly interpreted or applied, to have errors rectified, or to void such rule or regulation on grounds of its discriminatory or arbitrary character." 1960 Order, § V(D); *see also* ASCAP Articles of Association, art. XIV, at § 4. Pursuant to this provision, the Panel's final disposition voided the 3% rule but did not establish a new weight for jingles. The Panel's decision explicitly states that it is " 'in full settlement of all claims submitted to this Arbitration....' " *Karmen*, 1992 WL 167383, at *2 (quoting award). Hence, while the September 1991 changes to the weighting formula may have occurred as a result of the Panel's award, they were not part of the award.

By its plain language, Section V(D) of the 1960 Order mandates retroactive application of awards of "additional amounts" only. The Panel did not, and under the circumstances could not, award an "additional amount" to petitioner, either in the form of a specified amount of money or in the form of changes to the weighting formula. Petitioner's complaint challenged the 3% rule itself, and his award was the Panel's decision to void the rule. This was no small victory, but it is simply not the type of award for which peti-

---

**2.** As we have previously held, we have exclusive jurisdiction to consider applications that require

construction of the Consent Decree, as amended

tioner is entitled to retroactive application.[3]

Petitioner contends, quite vehemently, that ASCAP has repeatedly stated that the September 1991 changes to the weighting formula were instituted as a result of his complaint. He also contends that this court and the Second Circuit relied on those representations in denying petitioner's previous applications. Petitioner therefore argues, in essence, that it is inequitable to permit ASCAP to avoid making the retroactive payment that he demands by claiming that the 16% increase was not a part of the Panel's award. As petitioner himself points out, however, it is not what ASCAP may have said about the September 1991 changes that matters. See Reply Affidavit of Steve Karmen, dated July 6, 1995, at ¶ 11. The availability of retroactive payment is governed by the language of Section V(D) of the 1960 Order. Under that provision, petitioner is not entitled to a retroactive award of 16% of the royalties that ASCAP paid to him between 1981 and 1991.

Furthermore, neither this court's nor the Second Circuit's decisions in this case relied on any statements made by ASCAP about the anticipated 16% increase in credits for jingle performances. The courts' opinions mention the September 1991 changes to the weighting formula, if at all, only in passing and only in the context of explaining the factual backdrop of petitioner's application. See Karmen, 32 F.3d at 728; Karmen, 1992 W.L. 167383, at *2, *3. We denied petitioner relief because 1) the Panel's decision to void the 3% rule exhausted the Panel's mandate and 2) petitioner did not have standing to invoke this court's power to establish a new weighting formula.[4] See Karmen, 1992 WL 167383, at *2–*4; see also Karmen, 32 F.3d at 732–33 (affirming our decision in full). Therefore, we did not deny petitioner's previous applications because he had received relief from the Board in the form of the September 1991 changes; instead, we held that

we did not have the power to grant the relief that he sought. This decision did not depend in any way the fact that ASCAP had made the September 1991 changes to the weighting formula.

■ Turning now to petitioner's request for an accounting and payment of any deficiency in the royalties that he has received since the institution of the September 1991 changes to the weighting formula, we agree with ASCAP that petitioner must address these complaints to the Board in the first instance. Because the September 1991 changes are not part of the Panel's award to Karmen, he is not entitled to a 16% increase in the credits awarded for performances of his jingles as an outgrowth of his 1981 complaint. Therefore, his request for an accounting to prove whether a 16% increase in credits awarded for jingle performances has actually taken place and his demand for payment of any deficiency are in effect a challenge to the adequacy of the weighting formula instituted in September 1991. There is no dispute that petitioner has not filed a complaint with the Board challenging the September 1991 changes. Therefore, petitioner has not exhausted his remedies and may not apply to this court for relief at this time.

Petitioner argues that after thirteen years of arduous litigation, he should not be required to start over again in order to obtain relief. We can understand petitioner's reluctance to begin the review process again. Nevertheless, plaintiff's 1981 complaint challenged only the weighting formula adopted in 1981. Petitioner has not filed a complaint before the Board concerning the current weighting formula or the royalty payments made to him under that formula. While the review process may be time-consuming, there is no indication that pursuing it would be futile. Petitioner has persuaded the Panel to

---

by the 1960 Order. See Karmen, 832 F.Supp. at 86; see also Karmen, 32 F.3d at 731–32.

**3.** By contrast, if petitioner filed a protest on the ground that ASCAP had improperly calculated his royalty payment under the existing weighting formula and petitioner prevailed, petitioner would presumably receive a monetary award to correct the error. In that case, petitioner would

be entitled to retroactive payment of that "additional amount."

**4.** This court may establish a weighting formula only if ASCAP unilaterally seeks to change the weighting formula, the government objects to the proposed change, and ASCAP and the government bring the matter to this court for decision. See Karmen, 832 F.Supp. at 86.

void one weighting formula as arbitrary, and there is no reason to believe that he could not achieve the same result again if circumstances warranted an award in his favor.

## CONCLUSION

Petitioner's application is denied.

SO ORDERED.