**UNITED STATES of America,**
**Plaintiff,**

v.

**AMERICAN SOCIETY OF COMPOSERS,**
**AUTHORS, AND PUBLISHERS,**
**Defendant-Appellee,**

**Gary Zekley, Eddie Brandt, Appellants.**

**Nos. 871–874, Dockets 711200, 711281–711283.**

United States Court of Appeals, Second Circuit.

Argued March 31, 1971.

Decided May 7, 1971.

Lee A. Rau, Atty., Dept. of Justice, Washington, D. C. (Richard W. McLaren, Asst. Atty. Gen., Gregory B. Hovendon, John L. Wilson, Attys., Dept. of Justice, Washington, D. C., on the brief), for plaintiff.

Arthur H. Dean, New York City (Sullivan & Cromwell, Roy H. Steyer, Joel M. Miller, Mack M. Braly, Herman Finkelstein, New York City, on the brief), for defendant-appellee.

Theodore H. Friedman, New York City (Phillips, Nizer, Benjamin, Krim & Ballon, New York City, Kant, Gordon & Meyers, Eve M. Preminger, New York City, Stephen Z. Meyers, Stuart J. Gordon, Phalen J. Hurwitz, Beverly Hills, Cal., on the brief), for appellants.

Before LUMBARD, Chief Judge, and FRIENDLY and HAYS, Circuit Judges.

HAYS, Circuit Judge:

The controversy presented by this appeal from certain orders of the United States District Court for the Southern District of New York is concerned with the distribution by the American Society of Composers, Authors and Publishers, among its members of a fund of $9,920,000.

ASCAP is an association of composers, authors and publishers of musical compositions the basic purpose of which is to protect its members against infringement of the copyrights on their works. It licenses its members' compositions for public performance and collects the royalties which it distributes to the members.

The action of which the present proceedings are a phase originated in 1941 when the United States brought an action against ASCAP alleging that certain aspects of ASCAP's methods of licensing constituted violations of the antitrust laws. A consent judgment was entered, which as subsequently modified by the Amended Final Judgment of 1950, now governs ASCAP's licensing methods.

The fund in controversy arose in the following manner:

Under the 1950 judgment the district court is empowered to fix a reasonable fee for licensing if ASCAP and the licensee are unable to agree on the fee. In 1962 Columbia Broadcasting System, Inc. and American Broadcasting Company sought a determination of the fee to be paid by them for the use of works licensed by ASCAP. During the period from 1962 until 1969 CBS and ABC paid interim fees under interim licenses from ASCAP. In 1969 ASCAP agreed with CBS and ABC on the fees to be paid and the agreement was approved by the district court. The amount paid retroactively by CBS and ABC for the use of the ASCAP licenses from 1962 to 1969, after deducting certain expenses and other payments, produced a total of $9,920,000 available for distribution.

Briefly stated the issue we are required to determine is whether the fund in controversy should be included in the regular distribution for the fourth quarter of 1970, as decided by ASCAP and

approved by the district court, or, as appellants contend, should be allotted by a special distribution to the members whose compositions were performed in the years 1962 to 1969.

Appellant Zekley, as an individual, is a writer member of ASCAP. He is also a publisher member doing business as Teenie Bopper Music publishers. Appellant Brandt is a writer member. Zekley, later joined by Brandt, originally brought an action in the Superior Court of California to enjoin ASCAP's proposed distribution of the fund. On the application of ASCAP, the district court, in the course of the present proceedings, enjoined the appellants from prosecuting their action in the California court, and appellants have appealed from that order.

A procedural point raised by the appellees, the standing of appellants to bring this appeal, should logically be determined before we reach the merits and the injunction against state court action. However since the nature of the procedural issue will be more clearly apparent after a discussion of the merits, we will postpone consideration of it.

### I.

### The Injunction Against the Action in the California Court

Appellants urge that in granting an injunction against appellants' prosecution of their action in the California state court, the district court violated the provisions of 28 U.S.C. § 2283 (1964):

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

As the United States has argued, a variety of state court decisions would tend to frustrate the antitrust policy of the consent decree. The need for exclusive jurisdiction in the federal district court was recognized when the following provision was included in the Amended Final Judgment of 1950:

"Jurisdiction of this cause is retained for the purpose of enabling any of the parties to this Amended Final Judgment to make application to the Court for such further orders and directions as may be necessary or appropriate in relation to the construction of or carrying out of this Judgment for the modification thereof, for the enforcement of compliance therewith and for the punishment of violations thereof."

As the Supreme Court said in Atlantic Coastline R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970):

"[F]ederal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case."

■ We hold that the district court correctly enjoined the action in the state court since the injunction was "necessary in aid of its jurisdiction" and "to protect or effectuate its judgments."

### II.

### Distribution of the Fund

■ The district court has approved ASCAP's action in deciding to distribute the controverted fund as an addition to the regular distribution for the fourth quarter of 1970. Under the generally applicable rule as to distribution, the distribution to writers for the fourth quarter of 1970 would be based on performance during the last three quarters of 1969 and the first quarter of 1970; the distribution to publishers would be based on the last quarter of 1969 and the first three quarters of 1970 (adjustable in April 1971 when complete data for the four quarters are available). Appellants urge that distribution of the special fund ought to be made to those for whose performance the fund was paid, i.e., it should be distributed on the

basis of performance during the years 1962–1969.

It seems to us that the application of usual equitable principles would lead to the result sought by appellants.

Appellants cite as an example of the inequity of the ASCAP distribution determination the case of a publishing company which was not organized until 1970 but which, under that determination, would receive a relatively large payment, although, of course, performance of its works could not have contributed at all to the creation of the fund. The record before us does not indicate how many such examples there may be. It seems fair to assume that there would be many instances in which inequities of greater or less degree would result, since it may be taken as common experience that there would be great differences in the production and the popular success of musical compositions over a period of nine years.

ASCAP does not seek to defend its method of distribution on the ground of equity. Indeed on September 23, 1970, the Executive Vice-President of ASCAP said:

> "In 1970 the Society has received certain unusually large sums from CBS and NBC [sic]. These payments relate to prior years and were made, for the most part, for the television networks of CBS and ABC. If the payments were for current license fees they would be distributed in the normal way. The fact they [sic] they are payments related to performances in prior years led your Board to decide that fairness required a special distribution."

Nor does the district court claim that its ruling is based on equitable principles.

The objection to a distribution which would reflect the incidence of performance of various musical compositions during the period for which the fund represents payment is twofold: first, it is said that the distribution directed by ASCAP and approved by the district court is required by the consent decree; second, ASCAP argues that a distribution based on performance during the retroactive period would be *impossible* or at least quite impractical from the point of view of expense and otherwise.

(1) We do not find in the consent decree any provision which would require that distribution be made by the method adopted by ASCAP. We are cited to certain language in a 1960 order which implemented in some respects the Amended Final Judgment of 1950. But as we read that language it provides merely for distributions based upon "applicable" survey quarter years, i.e., apparently, the quarters for which results of surveillance of performance are available and appropriate. The Amended Final Judgment of 1950 which is the basic charter for the entire operation provides:

> "Defendant ASCAP is hereby ordered and directed to distribute to its members the monies received by licensing rights of public performance on a basis which gives primary consideration to the performance of the compositions of the members as indicated by objective surveys of performances (excluding those licensed by the member directly) periodically made by or for ASCAP."

It seems clear to us that the decree contemplated a method of distribution based fundamentally on the number and character of the performances of the members' musical compositions. The supplemental order of 1960 was not intended to accomplish any change in this fundamental principle. There is no provision of the decree specifically applicable to a large retroactive payment of the type involved here and the possibility of such a payment may not have occurred to the parties drafting the decree.[1] The

---

1. Indeed, to the extent that the 1960 Consent Order indicates anything at all about the handling of extraordinary revenues, it suggests that distribution on a current performance basis—unrelated to the actual performances which created the revenues

absence of such a specific provision cannot properly be interpreted to prohibit a distribution to those whose performances gave rise to the fund, a method of distribution which is supported by the general provision of the 1950 judgment and by the applicable principles of equity.

(2) Appellees argue that to achieve the kind of equitable distribution which would allocate the fund to those whose efforts served to create it would be impossible or, at least, highly impractical. Their argument, however, gives us little information as to the nature of the difficulties which they foresee. The only concrete example of such a difficulty that appellees advance is said to arise from the fact that while the total sum paid by CBS was allocated to the individual years covered by the payment, ABC's payment was not so allocated. Without deciding what formula *should* be adopted to resolve this problem, we suggest that there are several possible solutions, such as, for example, allocation of the ABC payment in the same proportions as the CBS payment was allocated.

Once an allocation as to years is completed, it would seem a rather simple matter to direct a distribution which reflected the presently available performance surveys for those years or which mirrored the percentage of the fund actually distributed to each member in each particular year. Again, this is merely a suggestion intended to illustrate possible bases of distribution which are both practical and surely more equitable than the one which ASCAP has adopted.

Appellants do not make any specific proposals as to the exact details of the distribution for which they argue. It is their position that the district court should hold a hearing at which proposals for distribution in accordance with general principles of payment to those whose performances gave rise to the funds could be made and given deliberate consideration. The United States also supports this procedure.

We are far from convinced that no practical plan of equitable distribution can be devised. It is not our function to formulate the details of such a plan. We believe, however, that an opportunity should be offered to the appellants and other interested persons to propose methods of distribution, and that the district court should make every attempt on the basis of such proposals, and of its own expertise, and with the assistance of the United States, to work out a plan of distribution which would more nearly approximate the demands of equity than the plan adopted by ASCAP.

### III.

### Procedural Issues

■ There remains for determination only the procedural issue referred to earlier.

Appellees claim that appellants have no standing to take this appeal. They argue that appellants were not proper parties to the action in the district court since they did not secure permission to intervene and that, even if they are properly to be considered parties, they were not "aggrieved" by the district court's orders.

Appellants did not initiate the proceeding in the district court, but were brought into it by an order to show cause secured by appellees. There was no occasion for their seeking to intervene since they were given no choice. Their position resembled that of a defendant. Under such circumstances appellants must be considered to be parties for the purpose of this appeal. See Cohen v. Young, 127 F.2d 721, 724 (6th Cir.

---

—was to be avoided if at all possible. Thus, when the revenue from any foreign source exceeded $200,000 per annum, it was not to be distributed on a current performance basis (calculated from domestic sources) but rather was to be allocated on a basis which reflected the actual foreign performances in the period during which the revenue was earned—or as close an approximation to this as possible. See 1960 Consent Order, section III E.

**606**

1942), cert. denied, 321 U.S. 778, 64 S. Ct. 619, 88 L.Ed. 1071 (1944).

It appears from the affidavits filed by appellants in the district court that they themselves would benefit by a method of distribution which took into account the performances of appellants' compositions during the period from 1962 to 1969, as compared with the method approved by the district court. They are, therefore, at least prima facie, "persons aggrieved" by the district court's orders.

Except for the order enjoining the California action, which is affirmed, the orders of the district court are reversed and the case is remanded for further proceedings in accordance with this opinion.