**Shaynah J. DIABO, Petitioner,**

v.

**Patricia DELISLE, Cedric Thomas, George M. Raus, and Aaron Jake Thomas, Respondents.**

**No. 5:05–CV–1296.**

United States District Court, N.D. New York.

Aug. 8, 2007.

---

Miles & Stockbridge, P.C., Stephen J. Cullen, Esq., of counsel, Towson, MD, Scolaro, Shulman, Cohen, Fetter & Burstein, P.C., David C. Temes, Esq., of counsel, Syracuse, NY, for Petitioner.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Senta B. Suida, Esq., Ass't Attorney General, of counsel, Syracuse, NY, for Respondent Referee.

Hoffman, Hubert Law Firm, Terrance J. Hoffman, Esq., of counsel, Syracuse, NY, for Respondent Father.

### MEMORANDUM–DECISION, ORDER and PERMANENT INJUNCTION

DAVID N. HURD, District Judge.

## I. INTRODUCTION

An Order was issued on July 17, 2007, deeming George M. Raus, a Court Attorney Referee in Onondaga County Family Court ("referee") a necessary party, making him a respondent, and temporarily restraining him, together with any and all officials with the Family Court of New York State, from proceeding with a trial to determine custody of the minor child who is the object of this action brought pursuant to the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601–11611, and directing the referee or his representative to appear and show cause why a preliminary injunction to the same effect should not be granted. The Attorney General on behalf of the referee (i.e., the New York State courts) and Aaron Jake Thomas ("the father"), through his attorney, opposed. All parties submitted extensive affidavits, documents, and memoranda of law.

Prior to oral argument on July 27, 2007, in Utica, New York, the father was also deemed a necessary party and made a respondent. After allowing the parties unlimited oral argument, a decision was rendered from the bench finding that no evidentiary hearing or trial was required to determine the issues on the merits, pursuant to Fed.R.Civ.P. 65(a)(2); advancing and consolidating a determination on the merits with the application for preliminary injunctive relief; and extending the temporary restraining order until August 10, 2007, pursuant to Fed.R.Civ.P. 65(b). Decision on the merits was reserved.

## II. BACKGROUND

The factual background is set forth in only enough detail to provide context to this decision.

Shaynah J. Diabo ("petitioner" or "the mother") is a member of the Kahnawake Band of (Mohawk) Indians and originally resided on the Kahnawake Mohawk Territory in Quebec, Canada. She is the mother of the minor child. She and the child's father never married. The mother and father were both teenagers when the child was born, and they resided with the father's parents, respondents Patricia Delisle Thomas ("the grandmother") and Cedric Thomas ("the grandfather"), for a number of years. The grandmother, a member of the Mohawk Nation, and the grandfather, a member of the Onondaga Nation, resided at the Onondaga Nation Territory near Nedrow, New York.

According to the mother's Petition for Return of a Child, she and the father intended to change their residence to the Kahnawake Mohawk Territory in Quebec, Canada, when they traveled there for a Pow Wow on July 9, 2004. The grandmother disagreed with the mother and father's decision to stay in Canada, and she took the child back to New York with her on July 12, 2004. The mother and father remained in Canada. They no longer lived together after October 2004. The grandmother and grandfather refused the mother's requests to return the child to live with her in Canada. The father purportedly granted the grandparents custody of the child in December 2004.

On February 4, 2005, the mother filed a Request for Return of a Child Addressed to the United States pursuant to the Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 ("Hague Convention child abduction treaty"). Both Canada and the United States are signatories to the Hague Convention child abduction treaty.

On April 4, 2005, the Onondaga Nation Council of Chiefs purportedly granted full physical custody of the child to the grandparents ("Onondaga custody order"). The grant of custody was retroactive to September 2003, and stated that it would remain effective until April 5, 2010.

The father joined the United States military in April 2005 and was generally out of the area until his honorable discharge in the fall of 2006.

An order dated June 29, 2005, by the Superior Court for the District of Longueuil, Quebec, Canada granted the mother custody ("Canadian custody order").

The Petition instituting this action in the Northern District of New York, pursuant to ICARA, the United States enabling legislation to the Hague Convention child abduction treaty, was filed under seal on October 12, 2005. Through the Petition the mother sought return of the child to her in Canada from the grandparents in New York.

An Order to Show Cause and Temporary Restraining Order was entered on October 13, 2005. This Order temporarily restrained the grandparents from removing the child from the Northern District of New York. It directed them to appear on October 21, 2005, with the child and the child's and their passports and travel documents, for an initial hearing so that a date could be set for an expedited hearing on the merits of the Petition for Return of the Child to the mother. Upon consideration of the submissions of the parties, an Amended Order to Show Cause and Temporary Restraining Order was entered on October 21, 2005, resetting the date for the initial hearing.

Also on October 21, 2005, an Order was entered granting permission to General Counsel to the Onondaga Nation and to the Onondaga Council of Chiefs and the Leaders of the Iroquois Confederacy ("counsel to the Onondagas") to appear as amicus. It also ordered a partial unsealing of the record to permit counsel to the Onondagas access to all pleadings and entries on the docket.

The grandparents then moved to dismiss or for summary judgment. Oral argument on the motion was heard on December 19, 2005. In a decision rendered from the bench, it was held that the Hague Convention child abduction treaty and ICARA applied to respondents despite their being Native Americans and members of the Mohawk and Onondaga tribes; viewing the facts as set forth in the petition as true, petitioner stated a valid claim; and viewing the facts most favorable to petitioner, questions of fact must be resolved on credibility issues at a hearing as to (1) the habitual residence of the child; (2) legal custody rights; (3) nature of removal and retention; and (4) the nature of the exercise of custody rights by petitioner at the time of removal. Accordingly, the motion to dismiss or for summary judgment was denied. A hearing on the merits was set down for February 28, 2006.

On February 28, 2006, all parties and amicus appeared for the hearing on the merits and notified the Court that they were prepared to enter a stipulation into the record. The courtroom was unsealed for the limited purpose of the settlement hearing, permitting those in the audience to attend. Those in attendance in the courtroom included, among others, the mother and her counsel, the grandparents and their counsel, counsel for the Onondagas as amicus, and the father. The stipulation included a plan for reintegrating the child into the mother's life, consummating with the child being returned to reside with the mother in Canada in time for the beginning of the 2006–2007 school year, anticipated to be August 31, 2006. The stipulation was very clear that there was "no condition precedent for the return of [the child] to Canada to be with [the] mother on a permanent basis." Additionally, the parties agreed that the father and grandparents would have meaningful access to the child once he returned to Canada. The parties agreed not to attempt to enforce any of the alleged existing custody orders. The parties also agreed and understood that upon acceptance by the Court, the settlement would "constitute an enforceable order of this court, and that they will not breach or cause to be breached by any others the terms of this order which may be enforced by both the criminal and civil contempt powers of this court."

Upon questioning by the Court, the mother affirmed that she consulted with her attorneys about the terms and conditions of the settlement and agreed with it. She also promised to abide by its terms and conditions.

Upon questioning by the Court, the grandmother stated that she agreed with the terms of the settlement and she promised that she would comply with it.

The Court also questioned the father. He stated that he "agree[d] with that settlement" and had no questions about it.

As agreed, the parties submitted a written stipulation reflecting the terms as set forth in open court. Additionally, the written stipulation provided that the child would be returned to Canada to live with the mother in time for the start of the 2006–2007 school year, and in no event later than August 28, 2006. The written stipulation further provided that the Court would retain jurisdiction for the purpose of

enforcing the terms and conditions of the Stipulation and Order.

Upon consideration of the terms of the settlement as set forth in open court, the parties' stated agreement with the terms and their promises to abide by the terms and conditions, the written stipulation submitted by the parties, and all other matters in the record, the stipulation was so ordered and entered on the record on April 3, 2006 ("April 2006 Order").

On August 29, 2006, petitioner filed an Emergency Motion to Hold Respondents in Contempt of Court, Emergency Petition for Warrant in Lieu of Writ of Habeas Corpus, and Request for Emergency Hearing, because the grandparents concealed the child and refused to turn the child over to the mother on the court-ordered date for return of August 28, 2006. An Order to Show Cause was issued directing the grandparents to appear on August 31, 2006, to show cause why they should not be held in contempt of court. Counsel for the Onondagas requested a one-month adjournment. The adjournment was denied.

On August 31, 2006, at 2:30 p.m. a hearing was held on the emergency motion. Petitioner appeared and testified under oath that the child had not been returned to her on or before August 28, 2006, contrary to the April 2006 Order. The grandmother and grandfather admitted that they failed to comply with the April 2006 Order, and they continued to refuse to comply with the order. Additionally, they did not offer any valid excuse for their failure to comply with the April 2006 Order. The grandparents were directed to produce the child by 5:00 p.m. They refused to do so. Accordingly, the grandmother and grandfather were held in contempt of court and a warrant was issued for their arrest. In accordance with the Order and Warrant of Arrest, the United States Marshal took the grandmother and grandfather into custody at approximately 5:05 p.m. on August 31, 2006.

A warrant for the arrest of the child was also issued. However, the child was not located and the warrant was never executed.

The grandmother and grandfather remained in custody until September 8, 2006. They were released from the custody of the Marshal upon causing the child to be relinquished and returned to the mother in Canada. The child has resided with the mother in Canada since that date.

The father initiated a custody proceeding in Onondaga County Family Court, apparently in January 2007. The mother filed a motion to dismiss, which was denied by the referee. The referee then set August 8, 2007, for a trial to determine custody and parenting time rights, prompting petitioner to bring this proceeding to enforce the April 2006 Order.

On March 7, 2007, the father filed a motion for modification of the Canadian custody order, or in the alternative for a change of custody, in the Superior Court for the District of Longueuil, Quebec, Canada. The relief requested was that "visitations be organized immediately and if necessary through the good offices of Consensus Mediation Center ..."; alternatively, should the mother not cooperate with the visitation, granting custody of the child to the father; and ordering visitation immediately and, if necessary, "through the good offices of Consensus Mediation Center."

The mother agreed that the father should have visitation with the child to take place at the Consensus Mediation Center. Through counsel, she submitted a proposed consent order to the modification of the Canadian custody order to that effect. Apparently the father has not exe-

cuted the proposed consent order. He now complains that visitation through the Consensus Mediation Center is not meaningful and is "absurd and unconscionable."

## III. *DISCUSSION*

Petitioner seeks a permanent injunction preventing custody determinations from being made in the courts of New York State, specifically the Onondaga County Family Court. She contends that a permanent injunction is required in order to protect and effectuate the April 2006 Order.

### A. *The Anti–Injunction Act*

Proceedings in state courts cannot be interfered with by federal courts except in very limited circumstances. *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146, 108 S.Ct. 1684, 1689, 100 L.Ed.2d 127 (1988). This policy of preventing lower federal courts from interfering in state court proceedings in order to "balance the tensions inherent" in a "dual system of federal and state courts" was expressed by Congress as early as 1793, in the Anti–Injunction Act. *Id.* at 145–46, 108 S.Ct. at 1689. The Anti–Injunction Act now provides:

> A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. The prohibition against enjoining state court proceedings applies equally to enjoining the state court itself, enjoining a party from proceeding with the litigation, or enjoining "a necessary step in the state-court proceeding."[1] *Sperry*

*Rand Corp. v. Rothlein*, 288 F.2d 245, 247–48 (2d Cir.1961).

In other words, a federal court may enjoin state court proceedings where expressly authorized by Congress, to aid in the federal court's jurisdiction, and to protect or effectuate a federal court's judgment. 28 U.S.C. § 2283. The exceptions to the Anti–Injunction Act demonstrate "congressional recognition that injunctions may sometimes be necessary in order to avoid" a "disharmony between federal and state systems." *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 639 (2d Cir.1987). So long as an injunction is not prohibited by the Anti–Injunction Act, a federal court may, within its equitable discretion, enjoin state court proceedings. *Sperry Rand Corp.*, 288 F.2d at 249. It must be remembered that the exceptions to the Anti–Injunction Act "are designed to ensure the effectiveness and supremacy of federal law." *Chick Kam Choo*, 486 U.S. at 146, 108 S.Ct. at 1689.

An analysis must begin, then, with determining whether the injunction sought falls within an exception to the Anti–Injunction Act. If the injunction sought falls within an exception, it is not prohibited and may be issued in the court's discretion. *See Chick Kam Choo*, 486 U.S. at 146, 108 S.Ct. at 1689; *Sperry Rand Corp.*, 288 F.2d at 249.

There is no express authorization by Act of Congress which would permit the injunction petitioner seeks. The first exception is therefore inapplicable here. Thus, an injunction may issue only if it falls within the "in aid of jurisdiction" or "to protect or effectuate a judgment" exception.

---

1. Enjoining the state court itself, enjoining a party from proceeding with the litigation, or enjoining a necessary step in the state-court proceeding are referenced collectively as "enjoining state court proceedings" throughout this decision for simplicity.

### B. *In Aid of Jurisdiction Exception*

■■ The second exception permits enjoining state court proceedings "where necessary in aid of its jurisdiction." 28 U.S.C. § 2283. This exception must be "read in tandem with the All Writs Act, 28 U.S.C. § 1651." [2] *Hutton Constr. Co. v. County of Rockland,* Nos. 87 CIV. 4027, 93 CIV. 2465, 1997 WL 291954, at *3 (S.D.N.Y. June 2, 1997). Oftentimes this exception is applied " 'where the court has been heavily involved in settlement negotiations or the formulation of a consent decree.' " *Id.* (quoting *Olin Corp. v. Ins. Co. of No. America,* 807 F.Supp. 1143, 1152 (S.D.N.Y.1992)). It is also applicable "where issues subsequently raised in state court cannot be separated from the relief previously ordered in federal court." *Id.* (collecting Second Circuit cases). "Finally, an injunction in aid of jurisdiction is particularly appropriate where a district court retains jurisdiction over suits related to a consent judgment." *Id.* (citing *United States v. Am. Soc'y of Composers, Authors, & Publishers,* 32 F.3d 727, 731 (2d Cir.1994) and *United States v. Int'l Bhd. of Teamsters,* 907 F.2d 277, 280–81 (2d Cir. 1990), both of which upheld injunctions under the second exception); *United States v. Am. Soc'y of Composers, Authors, & Publishers,* 442 F.2d 601, 603 (2d Cir.1971).

■ Because a determination on the merits was to be made in this case, the Court was not involved in settlement negotiations. However, this Court was deeply involved in enforcing the April 2006 Order when the grandmother and grandfather failed to comply with it and the Court found them in contempt and ordered their arrest pending compliance. *See Hutton Constr. Co.,* 1997 WL 291954, at *4. Additionally, this Federal Court ordered relief that cannot be separated from relief sought in the pending state family court proceeding. *See id.* at *3. This Court ordered that the child be returned to reside with the mother in Canada, relief that would be rendered ineffective if the state family court made a custody determination in favor of the father. *See id.* Further, this Court ordered that enforcement of the allegedly existing Onondaga custody orders and Canadian custody orders not be sought, and that no additional custody orders would be sought. The father's custody petition in state court directly contravenes that order. *See id.* Finally, this Federal Court retained jurisdiction in order to enforce the terms and conditions of the April 2006 Order. *See Am. Soc'y of Composers, Authors, & Publishers,* 442 F.2d at 603; *Hutton Constr. Co.,* 1997 WL 291954, at *4. Accordingly, enjoining the New York State family court proceeding is permissible under the "necessary in aid of its jurisdiction" exception. *See Am. Soc'y of Composers, Authors, & Publishers,* 442 F.2d at 603; *Hutton Constr. Co.,* 1997 WL 291954, at *4.

### C. *To Protect or Effectuate Judgment (Relitigation) Exception*

■■ The third exception, to protect or effectuate a federal court's judgments, is commonly referred to as the "relitigation exception." *See Chick Kam Choo,* 486 U.S. at 147, 108 S.Ct. at 1690. The relitigation exception, "founded in the well-recognized concepts of res judicata and collateral estoppel," allows a federal court to prevent relitigation in state court of an issue previously decided by the federal court. *Id.* Res judicata applies to "preclude relitigation of a claim where the

---

**2.** The All Writs Act provides that "The Supreme Court and all courts established by Act of Congress may issue all writs necessary, or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

earlier decision was a final judgment on the merits rendered by a court of competent jurisdiction, in a case involving the same parties or their privies, where the same cause of action is asserted in the later litigation." *Amalgamated Sugar Co.*, 825 F.2d at 639.

 A consent judgment, because it is an exercise of judicial authority, is "entitled to res judicata effect." *Id.* at 639–40 (finding that judgment entered after parties agreed to settlement entitled to protection with injunction against state court proceeding); *Am. Soc'y of Composers, Authors, & Publishers*, 442 F.2d at 603 (holding "the district court correctly enjoined" a state court action to protect and effectuate a consent decree); *Hutton Constr. Co.*, 1997 WL 291954, at *3 (finding relitigation exception applies where issue was determined via stipulation and order); *see also Sperry Rand Corp. v. Rothlein*, 288 F.2d 245, 249 (2d Cir.1961) (finding that a court ruling that "took the form of an order entered on the moving papers" was a judgment that could be protected by enjoining state court proceedings). Moreover, "interlocutory as well as ... final decrees" may be protected by enjoining state proceedings. *Sperry Rand Corp.*, 288 F.2d at 249. Accordingly, a stipulation so ordered by the court is a judgment entitled to be protected and effectuated. *See Amalgamated Sugar Co.*, 825 F.2d at 640.

 Thus, if the issues presented in the state court action are the same as those litigated by the parties or their privies, and actually decided in this case, then the Anti–Injunction Act does not preclude enjoining the state court proceeding.

### 1. Identity of Issues

The April 2006 Order required the return of the child to reside with the mother in Canada. While a reintegration plan was contemplated by the April 2006 Order, there was no condition precedent to the return of the child to Canada. Pursuant to the April 2006 Order, the grandparents were not to enforce Onondaga custody orders and not to seek to obtain any other custody order. (The mother also was not to seek to enforce or obtain any further custody orders.) Further, the April 2006 Order provided that the parties agreed that its terms were in the best interest of the child. Thus, the April 2006 Order provided that it was in the best interest of the child to reside with the mother in Canada, that the child would reside with the mother, and none of the parties would initiate court proceedings to alter the residence of the child.

In the Onondaga County Family Court proceeding the father seeks custody of the child. The referee set a trial date to determine custody and parenting time rights. If the father were granted custody in the state court proceeding, the child would reside with the father. Such a determination would necessarily alter a provision of the April 2006 Order—that the child reside with the mother. Additionally, the parties were not to seek to obtain any further custody orders according to the April 2006 Order. A party (or their privies) seeking custody in a New York State court is directly contrary to the April 2006 Order. Finally, it was determined that it was in the best interest of the child to reside with the mother in Canada. The Family Court must determine the best interest of the child in order to make a ruling on custody—the identical issue decided in the April 2006 Order. *See McGrath v. Collins*, 202 A.D.2d 719, 720, 608 N.Y.S.2d 556 (N.Y.App. Div.3d Dep't 1994) (noting that "[i]t is well settled that the best interest of the child standard applies in any type of child custody proceeding").

The same issues are presented in the state court proceeding that were previous-

ly decided in this forum. Thus, this prong of the relitigation exception is met.

### 2. Identity of Parties

As was determined in the bench decision of July 27, 2007, the father was deemed a respondent in this action. He had notice of this proceeding through service upon his counsel Terrance J. Hoffman, Esq. Further, the father submitted opposition to petitioner's motion including his sworn affidavit and argued his position before this Court. Thus, it was appropriate that he be deemed a party to this action. *See Pianta v. H.M. Reich Co.*, 77 F.2d 888, 890 (2d Cir.1935) (finding that a non-party who appeared in answer to a court's notice to show cause was "like a defendant who is summoned by process of court and after an adverse ruling has the right to appeal" (internal quotation omitted)); *Cohen v. Young*, 127 F.2d 721, 724 (6th Cir.1942) (same, quoting *Pianta); Am. Soc'y of Composers, Authors, & Publishers*, 442 F.2d at 605 (relying on *Cohen* to find that appellants who were brought into the lower court proceeding by order to show cause obtained by appellees must be considered parties).

Even if it were not appropriate to consider the father a party to the instant action, it would be proper to enjoin him from proceeding with the state court custody action. Similarly, it would be proper to enjoin the law guardian appointed by the referee as well as any other persons, such as social services workers and relatives, who may purport to seek custody based on the best interests of the child. ▮▮▮ Where a non-party has had a full opportunity to litigate the issues, the non-party may be enjoined from continuing a state court proceeding. *ACLI Gov't Sec., Inc. v. Rhoades*, 963 F.2d 530, 533 (2d Cir.1992); *Amalgamated Sugar Co.*, 825 F.2d at 641. A non-party may also be estopped "from relitigating issues necessarily decided in a suit brought by a party who acts as a fiduciary representative for the beneficial interest of the nonparties." *Sea–Land Servs., Inc. v. Gaudet*, 414 U.S. 573, 593, 94 S.Ct. 806, 819, 39 L.Ed.2d 9 (1974). The nonparty would be bound by the decision in the previous proceeding as it relates to the "interest which was the subject of the fiduciary relationship." *Id.* at 593–94, 94 S.Ct. at 819. Further, it is appropriate to enjoin relitigation when a non-party could use the federal court decision against a party to the federal court action. *ACLI Gov't Sec., Inc.*, 963 F.2d at 533.

The father had an opportunity to litigate the issues resolved by the April 2006 Order. He appeared in open court and stated his agreement with, and no objections to, the proposed order directing that the child reside with the mother in Canada. *See ACLI Gov't Sec., Inc.*, 963 F.2d at 533; *Amalgamated Sugar Co.*, 825 F.2d at 641. He could have requested intervention to participate in the action, but he did not do so. In addition, he purportedly gave custody to the grandparents, so the grandparents, in agreeing that the child reside with the mother (essentially turning custody over to the mother) were representing the father's beneficial interests. *See Sea–Land Servs., Inc.*, 414 U.S. at 593, 94 S.Ct. at 819. Further, the father could use the April 2006 Order against the mother, should she fail to comply with its terms. *See ACLI Gov't Sec., Inc.*, 963 F.2d at 533. Accordingly, the father, if not a party, could properly be enjoined from pursuing a state court custody proceeding.

Likewise, other non-parties—such as the law guardian—who may purport to represent the child's best interest could properly be enjoined from going forward with a state court custody proceeding. Any such non-party to this action would necessarily

be representing the interests of the child, exactly the interests that were determined in the April 2006 Order. *See Sea–Land Servs., Inc.,* 414 U.S. at 593–94, 94 S.Ct. at 819.

Thus, the father and any such non-parties as were just described would be bound by, and prohibited from relitigating, the determination of this Federal Court that it is in the best interest of the child to reside with the mother.

### 3. Issues Actually Decided

Both the referee and the father argue that no decision on the merits was made and therefore the Anti–Injunction Act does not apply. However, it is clear that an order approving a settlement, as was the April 2006 Order, is entitled to the same weight as any other order of the court. *See Amalgamated Sugar Co.,* 825 F.2d at 640 ("entry of a consent judgment is an exercise of judicial power ... [that] cannot be treated as idle ceremon[y] without denigrating the judicial process"; despite settlement agreement, controversy exists until judgment is entered); *Am. Soc'y of Composers, Authors, & Publishers,* 442 F.2d at 603; *Sperry Rand Corp.,* 288 F.2d at 249; *Hutton Constr. Co.,* 1997 WL 291954, at *3. Thus, any issues resolved in the April 2006 Order or in other orders in this matter may not be relitigated in state court.

The issues decided in the April 2006 Order, inter alia, are: it is in the best interest of the child to reside with the mother in Canada; the child was to be returned to the mother in Canada no later than August 28, 2006; there would be no attempt to enforce any custody orders allegedly existing at that time; there would be no attempt to obtain any other custody orders; the order constituted an enforceable order of the Court, the breach of which could be punishable by both civil and criminal contempt; and this Court retained jurisdiction to enforce its terms and conditions.

As noted above, the custody proceeding in state family court has at its heart the best interests of the child. *See McGrath,* 202 A.D.2d at 720, 608 N.Y.S.2d 556. Consequently, that action constituted an attempt to relitigate an issue already determined in this Federal Court.

The propriety of returning the child to the mother in Canada is another issue already decided here. Under the Hague Convention child abduction treaty and ICARA, a determination of the habitual residence of the child is made. *Gitter v. Gitter,* 396 F.3d 124, 130 (2d Cir.2005). It is then determined whether the removal or retention of a child away from the habitual residence is wrongful, that is, was in breach of the petitioner's custody rights as determined by the law of the habitual residence, which she was exercising. *Id.* at 130–31. If the petitioner makes the proper showing as just set forth, then she is entitled to return of the child to the place of habitual residence, where the laws applicable there will prevail as to any custody determinations. *See generally id.* at 129–31 (explaining the background and purpose of the Hague Convention child abduction treaty relating to deterring family from removing children to a sovereign state where the laws regarding custody may be more favorable). The basic premise of a petition for return is to restore the status quo (in the place of habitual residence) so that custody can be determined according to the law applicable there. *Id.* at 129–30. Because it was determined that the child should be *returned* to reside with the mother in Canada, it can be inferred that the habitual residence of the child was Canada. Once the child was returned to Canada, the status quo was restored, and

the law pertaining to custody determinations applicable there must reign.

A child custody proceeding in New York State family court, such as the one instituted by the father, is in contravention of the previous Hague Convention child abduction treaty action resolved by this Federal Court. To permit a state custody proceeding would undermine and make ineffective the April 2006 Order.

Moreover, the father brought a motion to modify the Canadian custody order on March 7, 2007. Bringing the motion to modify in the Canadian court demonstrates recognition that such determinations must be made there. The father cannot have it both ways—bring actions to determine custody in both sovereign states and then choose whichever is more favorable. To permit that would be in direct conflict with the purposes of the Hague Convention child abduction treaty. *See id.*

In sum, the issues resolved in this Federal Court and those before the referee are identical. The father is properly considered a party to this action. Even if he were not considered a party, he and any and all other persons acting on behalf of the child are bound by any injunction entered in this Federal Court action. The April 2006 Order has the effect of a binding judgment on the merits; therefore, the issues decided in it preclude relitigation of the same issues in a state court proceeding. Thus, this Federal Court may enjoin the state court custody proceeding in aid of its jurisdiction and to protect and effectuate its orders.

### D. *Remaining Issues*

 The referee argues that the *Rooker–Feldman* doctrine deprives this Court of jurisdiction because the petitioner's claim that the family court lacked jurisdiction was decided in the family court proceeding. *See Rooker v. Fidelity Trust Co.,*

263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923) (holding that lower federal courts cannot sit as appellate courts to review state court decisions). The *Rooker–Feldman* doctrine is not applicable where, as here, a federal court may enjoin a state court proceeding in order to protect and effectuate its own judgments.

 The referee also argues that abstention is appropriate under the *Younger* doctrine. *See Younger v. Harris,* 401 U.S. 37, 53–54, 91 S.Ct. 746, 755, 27 L.Ed.2d 669 (1971) (holding that injunctive relief against state criminal prosecutions is available only in extraordinary circumstances with a showing of irreparable harm). The *Younger* doctrine is not applicable in cases such as this one where the injunctive relief must be granted in order to protect and effectuate a federal court judgment, pursuant to the exceptions to the Anti–Injunction Act. *See id.* at 40, 91 S.Ct. at 748–49.

 The referee argues that petitioner seeks to change the status quo and therefore must demonstrate irreparable injury and the likelihood of success on the merits. However, this argument completely neglects the underpinning for any decision made pursuant to the Hague Convention child abduction treaty. A decision made under the Hague Convention child abduction treaty (and ICARA in the United States) has the effect of returning the child to the place of habitual residence—that is, returning the parties to the status quo. *See Gitter,* 396 F.3d at 129–30. Thus, contrary to the referee's argument, the parties are now in status quo. It is the father (not the mother) attempting to change the status quo with his custody proceeding in New York State family court.

It is also noted that all of the parties have mentioned irreparable harm. However, none of the cases cited in this decision regarding exceptions to the Anti–In-

junction Act have required a showing of irreparable harm as a prerequisite to injunctive relief granted to aid in a court's jurisdiction and to protect and effectuate a court's judgment. It can be inferred from these exceptions to the Anti–Injunction Act that the irreparable harm (as normally thought of in the context of seeking injunctive relief) is the assault on this Federal Court's jurisdiction and the infringement on the effectiveness of its judgments.

The father complains of the single-page Access Agreement that was provided by the original parties to this action and so ordered on July 17, 2006. He contends that he had no part in preparing the Access Agreement. The grandmother stated in sworn testimony that she did not agree to the terms of the Access Agreement that is on the record. Additionally, the mother seeks a modification to the Access Agreement given the grandparents' failure to return the child to her as agreed upon and subsequent alleged harassment. The appropriate solution would be to vacate that Access Agreement and enter a directive as part of this Order permitting the father visitation through the Consensus Mediation Center in Montreal, Canada. It is noted that this was the relief he sought in a motion to modify custody filed in the Canadian court. It is further noted that due to the April 2006 Order resolving the Hague Convention child abduction treaty/ICARA action, jurisdiction to determine visitation and the like lies in Canada.

Since it has been found that the father is properly a party to this action, and in any event is bound by any injunction issued in the matter, the referee need not continue to be named as a respondent and he will be removed from the title of the action. However, all New York State courts are subject to the permanent injunction precluding any proceedings involving the child. *See Chick Kam Choo,* 486 U.S. at 146, 108 S.Ct. at 1689 (stating the settled principle in the context of the dual system of federal and state courts, federal law is supreme).

Finally, ICARA provides that a petitioner seeking the return of a child, if successful, is entitled to an award of necessary expenses including court costs and legal fees unless a respondent establishes that such an award "would be clearly inappropriate." 42 U.S.C. § 11607. The mother brought this action pursuant to 42 U.S.C. § 11603 seeking the return of the child. This Federal Court ordered the child returned to the mother. Accordingly, the mother is entitled to an award of necessary expenses including court costs and legal fees unless the grandmother, grandfather, and/or the father establishes that such an award "would be clearly inappropriate." *See* 42 U.S.C. § 11607. Petitioner will be given an appropriate time within which to file an application for such necessary expenses, and respondents will have the opportunity to respond.

## IV. CONCLUSION

This Federal Court may enjoin the father from proceeding with his state court custody action in aid of its jurisdiction and to protect its judgment. The issues decided in the April 2006 Order and the parties in this action are the same as the issues presented and the parties in the father's state court custody proceeding. The April 2006 Order is a judgment entitled to be protected and effectuated. Thus, an injunction may issue pursuant to the relitigation exception of the Anti–Injunction Act. The New York State courts may also be subjected to the injunction.

The remaining arguments of the referee are without merit. As all parties disavow the Access Agreement, and in light of the grandparents' contempt in failing to return the child by August 28, 2006, as required,

the Access Agreement will be vacated. The referee will be dismissed as a respondent in this action. The mother is entitled to an award of expenses as provided by ICARA and will be provided time to file an application under 42 U.S.C. § 11607.

This Memorandum–Decision, Order, and Permanent Injunction will not be filed under seal.

Accordingly, it is

ORDERED that

1. George M. Raus is DISMISSED as a respondent;

2. The Order approving the Access Agreement is VACATED;

3. Aaron Jake Thomas may arrange visitation with the child at the Consensus Mediation Center, Montreal, Canada;

4. Any change to this provision (No. 3) must be approved in advance by this Court;

5. Patricia Delisle Thomas, Cedric Thomas, and Aaron Jake Thomas and any and all other persons including but not limited to the law guardian, relatives, and social services personnel allegedly acting for the minor child are PERMANENTLY ENJOINED from initiating or continuing any action in any New York State courts relating to the minor child;

6. A PERMANENT INJUNCTION is hereby entered staying any and all actions relating to the minor child in any and all courts of New York State;

7. Shaynah J. Diabo may file and serve an application for expenses related to this action on or before August 24, 2007. Patricia Delisle Thomas, Cedric Thomas, and Aaron Jake Thomas may file and serve a response on or before September 3, 2007. Petitioner may file and serve a reply on or before September 10, 2007. The application, if any, will be on submit without oral argument;

8. Any action in the United States involving the minor child must be brought in the United States District Court for the Northern District of New York;

9. Any proceedings to enforce this Order, Permanent Injunction, and/or any orders entered in this action must be brought in the United States District Court for the Northern District of New York;

10. This Court retains jurisdiction to enforce all orders in this action; and

11. This action is UNSEALED to the limited extent that this Memorandum–Decision, Order, and Permanent Injunction is placed on the public record.

IT IS SO ORDERED.